CASE 10.—PERSONAL INJURY ACTION BY EMMA REAUME
AGAINST THE LOUISVILLE & NASHVILLE R. R. CO.—Feb. 6.

# Louisville & Nashville R. R. Co. v. Reaume

Appeal from Kenton Circuit Court.

M. L. HARBESON, Circuit Judge.

Judgment for plaintiff, defendant appeals — Reversed.

1. Appeal—Misconduct of Counsel.—Where counsel persists in asking questions that the court has ruled incompetent, in order to impress the jury with the importance of the facts excluded, the case will be reversed, though the trial judge repeatedly disapproved such conduct.
2. Same—Decisions Reviewable—Amount of Recovery.—Although the amount awarded in a personal injury suit may seem out of proportion to the injury received, yet, if it is not so grossly excessive as to appear to have been the result of passion or prejudice, the verdict will not be disturbed on appeal.
3. Damages—Personal Injuries—Excessive Verdict.—In an action against a carrier for personal injuries, evidence as to the permanency of the injury and the loss of time and money on its account examined, and held to show a verdict for $10,000 to be excessive.

BENJAMIN D. WARFIELD for appellant.

S. D. ROUSE of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The damages are grossly excessive. Under the instructions of the court, the jury were permitted to award only compensatory damages. (Louisville So. Ry. Co. v. Minogue, 90 Ky. 369; L. & N. R. Co. v. Wathen, 22 Ky. Law Rep. 85; South Covington & C. St. Ry. Co. v. Ware, 84 Ky. 267; Southern Ry. Co. in Ky.

Louisville & Nashville R. R. Co. v. Reaume.

v. Goddard, 28 Ky. Law Rep. 523, 30 Ky. Law Rep. 126; L. & N. R. R. Co. v. Kingman, 18 Ky. Law Rep. 82; 1. C. R. Co. v. Houchins, 28 Ky. Law Rep. 499; C. & C. Bridge Co. v. Goodnight, 22 Ky. Law Rep. 1242; Louisville Water Co. v. Upton, 18 Ky. Law Rep. 326; H. B. Phillips Co. v. Prewitt, 26 Ky. Law Rep. 831; Watson v. Brightwell, 28 Ky. Law Rep. 887; L. & N. R. Co. v. Lowe, 118 Ky. 260; Louisville Ry. Co. v. O'Meara, 25 Ky. Law Rep. 819.)

2. The verdict is not sustained by sufficient evidence. (Civil Code, sec. 340; L. & N. R. Co. v. McGary's Admr., 104 Ky. 515, 516; L., H. & St. L. R. Co. v. Jolly's Admr., 28 Ky. Law Rep. 993.)

3. The court erred in the admission of much incompetent testimony for appellee, and in rejecting competent testimony offered by appellant.

4. The misconduct of appellee's counsel in persisting in asking witnesses questions, after the court had ruled upon the admissibility of such testimony and had excluded it, was highly prejudicial to appellant, and is reversible error. (C. & St. L. R. Co. v. Mines, etc., 77 N. E. 898; Scripps v. Riley, 38 Mich. 10; Chicago City Ry. Co. v. Gregory, 77 N. E. 1112; Chicago & State Line Ry. Co. v. Kline, 220 Ill. 334, 77 N. E. 229; English v. Ricks, 95 S. W. 189; Westley v. Washington Brick, Lime & Mfg. Co., 82 Pac. 271; Iveson v. McDonnell, 78 Pac. 202; Quinn v. N. Y. City Ry. Co., 94 N. Y. S. 560; Prewitt-Spurr Mfg. Co. v. Woodall, 90 S. W. 623; Robinson v. Bailey, 113 Ill. App. 123; Pioneer Reverse Assn. v. Jones, Ib. 156; C., P. & E. R. Co. v. Pritschau, 69 N. E. 663; McHenry Coal Co. v. Snedden, 98 Ky. 684; McKnight v. U. S., 115 Fed. 983; Hurst v. Williams, 31 Ky. Law Rep. 658; Marcum v. Hargis, 104 S. W. 693.)

5. The Kenton Circuit Court was without jurisidiction to try this case. Appellee's pretended residence in Covington, to which point she moved after the injury sued for, in order to give the Kenton Circuit Court jurisdiction to try the case, was not bona fide, and her declared intention of making Covington her home is entirely inconsistent with, and contrary to, her acts with reference thereto. (10 A. & E. Encyc. of Law (2 Ed. 20, 27); Montgomery v. City of Lebanon, 111 Ky. 646; City of Lebanon v. Biggers, 117 Ky. 430; Fidelity Trust & S. V. Co. v. Preston, 96 Ky. 277; 10 A. & E. Encyc. of Law, 28, 16; Civil Code of Ky. 340.)

6. The instructions given over appellant's objection were erroneous and prejudicial in sundry respects. C. & N. W. R. Co. v. Ohle, 117 U. S. 123, 127; L. & N. R. Co. v. McCombs, 21 Ky. Law Rep. 1232, 1238; Henderson City Ry. Co. v. Lockett, 30 Ky. Law Rep. 322; B. & O. S. W. R. Co. v. Sheridan, 101 S.

Louisville & Nashville R. R. Co. v. Reaume.

W. 928; L. & N. R. Co. v. Kingman, 18 Ky. Law Rep. 82; Ib.
v. Harrod, 115 Ky. 877.)

7. The court erred in refusing the instructions offered by
appellant.

JNO. C. STROTHER for appellee.

### POINTS AND AUTHORITIES.

1. There was no misconduct of appellee's counsel, such as to
affect appellant's material rights, and all the matters complained
of in this connection by appellant, were corrected and removed
by the admonition and rulings of the court. (Pennsylvania Co.
v. Roy, 102 U. S., 451; Miller v. Pryce, 20 Ky. Law Rep., 1544;
P. C. C. & St. L. Ry. Co. v. Lewis, 18 Ky. Law Rep., 957; Belle
of Nelson Dist. Co. v. Riggs, 20 Ky. Law Rep., 499.)

2. There was no error in the alleged repeating of question by
appellee's counsel as to other persons having been injured in
the derailment and settled with by appellant, because those
questions and the presumed answers thereto only tended to show
what the law presumed appellant to be guilty of under the
circumstances of this case and the details, magnitnde and severity
of the derailment which is not denied by appellant is conclusively
shown by the overwhelming testimony in the case. (Louisville
Railway Co. v. Brownfield, 29 Ky. Law Rep., 1099; L. & N.
R. R. Co. v. Rivers Admr., 85 Ky., 366; B. & O. S. W. Ry. Co.
v. Hausman, 21 Ky. Law Rep., 1264.)

3. The Kenton Circuit Court had jurisdiction of this case.

The question of jurisdiction when an issue in the pleadings,
could not be tried by the court on affidavits and motion. The
evidence clearly shows that before this suit was filed the appel-
lee had changed her residence to Kenton county in such manner
under the law as to confer jurisdiction on the Kenton Circuit
Court. (10 Am. & Eng. Ency. of Law, 20; 10 Am. & Eng. Ency.
of Law, 17, 18, 20, 26, 29; Gooding v. Gooding, 19 Ky. Law Rep.,
968; City of Lebanon v. Biggers, 117 Ky., 430; Montgomery v.
City of Lebanon, 111 Ky., 649. The case of Fidelity Trust Co.
v. Preston relied on by appellants is wholly unlike the case
at bar.)

4. The damages assessed by the verdict of the jury are not
excessive. The case of Lou. Sou. Ry. Co. v. Minogue, 90 Ky.,
369 relied on by appellant is not like the case at bar, in that
case no permanent injury or loss of income or business was shown.
Other cases relied on by appellant, reviewed and shown not to
apply to the case at bar. (South Cov. & Cin. St. Ry. Co. v.

Louisville & Nashville ·R. R. Co. v. Reaume.

Ware, 84 Ky., 267; Southern Ry. Co. v. Goddard, 28 Ky. Law Rep., 523; L. & N. R. R. Co. v. Kingman, 18 Ky. Law Rep., 82; I. C. R. R. Co. v. Houchins, 28 Ky. Law Rep., 499; Cov. & Cin. Brdige Co. v. Goodnight, 22 Ky. Law Rep., 1242; Louisville Water Co. v. Upton, 18 Ky. Law Rep., 26; H. B. Phillips Co. v. Pruitt, 26 Ky. Law Rep., 831; Watson v. Brightwell, 28 Ky. Law Rep., 887; L. & N. R. R. Co. v. Low, 118 Ky., 260.)

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Appellee, who was a passenger on one of appellant's trains, was injured by the derailment of the train at a point near Zion station on the line of its railroad between Cincinnati and Louisville. In an action brought by her to recover damages for injuries received the jury returned a verdict in her favor for $10,000.

A number of errors alleged to have been committed by the trial court are relied on as ground for reversal; but we will not notice any of them at length, except the one relating to the amount of damages awarded. The instructions are criticised, but they presented to the jury with admirable clearness the law of the case; and no error was committed in this respect. Much is also said about the misconduct of appellee's counsel in continuing to ask questions that the trial court had ruled incompetent. It is improper for counsel to persist in asking questions that the court has ruled to be incompetent; the purpose being to impress the jury with the importance of the facts that have been excluded from their consideration. When the court has sustained an objection to a question, it is the privilege of counsel to make an avowal as to what the witnesses would say if permitted to answer, and this avowal he has the right to have put in the record

for the purpose of an appeal. But the question excluded should not be again asked the same witness in like or a different form, unless it be that the objection was made to the question, because of the form in which it was put. . If this is the ground upon which the objection is based, counsel should, of course, be permitted to ask the question in proper form, so that the objection may go to the competency or relevancy of it. As an illustration of the manner in which counsel for appellee sought to get before the jury incompetent evidence, he repeatedly asked, in different forms and ways, if the railroad company had not settled or attempted to settle with other persons injured in the same wreck; and . also concerning the condition of the health of appellee's father and other members of her family. A party will not be permitted by indirect means to acquaint the jury with facts which he. is not allowed to bring to their notice by direct evidence. If this practice was permitted to go without criticism, or could be indulged in without suffering the penalty of reversal, the trial judge after exhausting all other means could not, unless he felt inclined to resort to contempt proceedings, prevent the mind of the jury from being prejudiced by the efforts of counsel to put before them in an indirect way evidence that was incompetent. Skilled counsel in resorting to practices of this character have in view the effect that it will produce on the jury, and their expectations are too frequently well founded, as it is difficult for a jury to escape from being impressed in some manner by the insistence with which damaging, but incompetent, evidence is offered and the objections of adverse counsel to it sustained. If a practice of this kind is persistently indulged in by counsel, although the trial judge repeatedly tried to

prevent it, it would as surely be grounds for reversal as any other substantial error that a party might commit in the trial of a case. The orderly conduct of the trial, the professional and personal deportment of counsel, the examination of witnesses, and all other matters connected with the proceedings, are under the control of the trial judge, and he has ample power and authority to enforce his rulings and to prevent counsel from disobeying them. But the trial judge is often reluctant to resort to extreme measures in dealing with attorneys engaged in the trial of a case, and is content to sustain objections that are made, and let the disapproved conduct pass with this, or a slight reprimand that at times is unheeded, but this court will not permit the nonaction of the trial judge or rather his failure to take such action as may be necessary to effectually restrain counsel to prejudice the rights of one of the parties, but will take such action as to it under all the circumstances seem right and proper. The distinguished counsel who tried the case for appellee has since died. He was an able, resourceful, and zealous lawyer. His experience on the bench, where he presided with honor and dignity, well qualified him to understand and appreciate when counsel in the trial of a case were overstepping the bounds of propriety, and he must have known. as did the excellent judge before whom this case was tried, that the evidence he was trying to get before the jury was wholly irrelevant and incompetent. Except for the fact that this case on a retrial will be conducted by other counsel, and our failure to call attention to the misconduct of former counsel might leave the impression that it was not open to criticism, we would not under the circumstances direct attention to it.

On the trial a question was made as to the residence of appellee; the appellant insisting that she was a resident of the state of Ohio, and not of Kenton county, Kentucky, at the time she brought the action in the Kenton circuit court. Upon this point, which will probably not arise on another trial, the jury under proper instructions found that appellee was a resident of Kenton county, and there was evidence sufficient to warrant their finding in this particular.

It is not necessary to discuss the cause of the accident as the company did not offer any reason or excuse for it. It was probably due to the fact that the train was running at a high, dangerous, and reckless rate of speed on the downgrade of a road full of sharp curves.

In considering the amount of damages assessed, and for the purpose of illustrating the fact that it is excessive, it will be necessary to relate with some particularity the evidence bearing upon this question. Appellee at the time of her injury in April, 1906, was a single lady about 24 years of age. Previous to the accident she had uniformly enjoyed good health, and had been a wage earner for several years. Her occupation was that of an actress, but she had given up the continuous practice of that profession, and opened in Cincinnati a school at which she taught elocution, fencing, and physical culture. There is some conflict in the evidence as to the amount of money she derived from her school; appellee placing the sum at about $1,700 a year. When injured, she was on her way to Carrollton, Kentucky, with a troop of players for the purpose of giving there a theatrical performance. Within a few hours after the wreck appellee and her company proceeded by another train to Carrollton, where that night they gave the prom-

ised entertainment. Appellee took the principal part in the play, which required some physical as well as mental exertion, and according to the evidence of witnesses who lived in Carrollton and were instrumental in getting up the entertainment she did not manifest any signs of injury or discomfort, but went through the performance as she would have done if nothing out of the usual had happened; and in response to questions by them said she was not hurt in the wreck. Some little time after the derailment, and while the passengers were yet at the scene of the accident, the conductor of the train went around among the passengers making inquiries about whether or not they were hurt, when the following took place between him and appellee, as testified to by her: "Q. What did he ask you, as well as you can remember? A. He asked me if I was hurt. I says, 'I don't think I am, at least no bones broken.' Q. Did any one else, any other than the conductor, then say anything to you? A. Yes, sir. Q. Who was that? A. Mr. Reed, who was seated at my side. He says, 'Why don't you tell him your back hurts?' Q. Was Mr. Reed the gentleman you spoke of yesterday? A. Yes, sir; acting manager of the theatrical troop. Q. What did you say? A. I told the conductor, 'My back hurts me so badly, and feels as though it had been wrenched or something.' Q. Was that all of the conversation that took place between you and the conductor? A. Yes, sir." The conductor testifies that he made a written memoranda of the name and address and injury received by the persons on his train; and, looking at the memoranda made at the time, there was on it the name of appellee, and the words, "not hurt," which she had written opposite her name, but afterwards, when she told him she was hurt on the back,

he added the words, "hurt on back." On the following morning appellee went to Cincinnati to the home of her parents, with whom she had been making her home for several years, and was there confined in the house and bed until May 16, 1906, whe she took a room in Covington, and was living in this room with a nurse at the time this suit was brought in June, 1906. It does not clearly appear why appellee left the home of her parents with whom she had been living in Cincinnati, and took up her residence in a room in Covington; nor is it necessary to inquire the motive which prompted her to do this. After her removal to Covington in May, she was confined a part of the time to the house, until in August, when she went to the mountains in West Virginia, and remained there until September. She testifies that the injury she received, which will be presently noticed in detail, compelled her to abandon her avocation of teaching elocution and physical culture, although on the evening of April 25, 1906, she took a light part in an entertainment given in honor of her mother's silver anniversary. The chief, in fact, only serious, injury appellee sustained was to the coccyx, which is a small bone at the extremity of the back bone. As described by one of the doctors, in early childhood the coccyx is not composed of solid bone. There is a soft tissue or cartilage. This cartilage is converted into bone as age advances, and the different parts of the coccyx unite more closely, and in persons of middle age it becomes inflexible. When injured, the person afflicted finds it difficult to sit down in the ordinary way without pain or discomfort, and it is frequently accompanied with an ailment called "coccyx neuralgia." Appellee was examined by and under the treatment of ten physicians at various times between

the accident and the trial.   Three physicians were introduced by appellant and seven on behalf of appellee, and all of them have the reputation of being honorable men and capable in their profession.   The three physicians who testified for appellant said that, after making a careful and thorough examination of appellee, they were positive her coccyx was neither fractured nor broken.   The physicians and surgeons who testified in her behalf said that they had also made a careful and thorough examination, and that the coccyx was fractured or broken, or in such a sensitive condition as to produce what is called "coccyx neuralgia."   Indeed, the weight of the medical testimony is to the effect that the coccyx was not fractured or broken. When it is considered that the coccyx in a person the age of appellee is rather a hard bony substance that can be examined almost as accurately as the finger on the hand, it is inexplicable to those not acquainted with the learning, skill, and ingenuity of the medical profession how there could be so wide a difference in the opinions of persons concerning a matter that is so simple and easy of solution.   Dr. Tarvin, introduced by appellee, testified that he examined her a few weeks before the trial.   Asked if he could say with reasonable certainty whether or not the injury to her spine which he testified was the cause of her suffering would be permanent or otherwise, he answered: "To an extent it will be.   These cases recover very slowly if they do recover, and relapses are frequent."   He also testified that, if the coccyx was broken, it was not discernible at the time he examined it.   But, although differing upon the question whether the coccyx was broken or fractured, all of the doctors agreed that, if it was broken or fractured, it could be removed by a surgical opera-

tion, and in this way relief would be had from the neuralgia and pain that are produced by an injured coccyx; and that the operation required would not be attended with any serious danger, although some of them expressed the opinion that there was a probability that a complete cure would not be effected even by removing it. There was also strong testimony to the effect that, if the coccyx had in fact been broken or fractured by the accident, appellee would have immediately suffered from it practically the same amount of pain that she did afterwards; and would have known at Carrollton, as well as when asked by the conductor, that some painful injury had been sustained.

Weighing the evidence of the doctors who testified, we have reached the conclusion that it is doubtful if the injury sustained by appellee is permanent, and, even if it be assumed that it is permanent, the decided weight of the testimony is that appellee can obtain relief from the pain and suffering produced by it by undergoing an operation that will not be attended with serious results. Taking this view of the case, the remaining question is: Are the damages so excessive as to warrant us in setting aside the verdict upon this ground? In this connection, we may add, that, although loss of time and loss of money growing out of the inability to perform one's usual duties or engage in one's usual pursuits or vocations is an element of damage to be considered in cases of this character, the loss of time and consequent loss of money shown in this case is not sufficient to warrant the judgment recovered by appellee. There is, indeed, no evidence that, if appellee's injuries are restored by the healing influence of time or by an operation, she will not thereafter be as fully equipped physically

as well as mentally to follow her usual avocations, as she was before the accident. Time and again this court has put itself upon record as being reluctant to interfere with the verdict of a properly instructed jury in cases that are of such a character that the amount awarded cannot be fixed or ascertained with any reasonable degree of certainty. Hence we have adopted the rule that, although the amount awarded may seem too large to us, and out of proportion to the injury received, yet, if it is not so grossly excessive as to appear to have been the result of passion or prejudice upon the part of the jury, their finding will not be disturbed. It must be apparent to every one that no fixed rule can be laid down as to the amount of damages that should in reason be awarded. The facts and circumstances of each case in relation to the person injured, the nature and extent of the injury, the manner of its infliction, and the character and degree of the negligence to which it is attributable are different. So that, if the jury is properly instructed, the trial in other respects free from error, and the only question upon which a reversal can be granted involves the sum assessed as damages, this court can only look for guidance to that provision of the Code declaring that a new trial may be granted when "excessive damages appearing to have been given under the influence of passion or prejudice" are awarded, and, after considering all the facts and circumstances surrounding the case, take such action as may seem proper. As often said, it must appear at first blush that the verdict is excessive before we will disturb it. But, when this conclusion is reached, it becomes our duty to set aside the verdict, and grant a new trial. In this connection it may be well to notice the opinions of this court in

a number of cases involving the question of excessive damages awarded in personal injury actions, for the purpose of illustrating that in setting aside this verdict, we are following what may be said to be the rule established by this court in cases of this character.

In Louisville Southern R. Co. v. Minogue. 90 Ky. 369, 14 S. W. 357, 12 Ky. Law Rep. 378, where a verdict for $10,000 was recovered for personal injuries consisting of internal bruises, a severe shock to the nervous system, and partial paralysis of one leg from the knee down, the court said: "The probable duration of her injuries is not shown by the testimony. Whether they are of a permanent character does not appear. The medical testimony, which was introduced, is utterly unsatisfactory in this respect. The burden rested upon the appellee to show the extent of her injuries. If of a permanent character, she should have shown it. A persual of the evidence created no satisfactory opinion upon this point, and leaves the matter in entire doubt. The physicians who testified say she may recover entirely, and she may not. * * * The opinion of a jury has been, and properly, no doubt, regarded as the best means of even a fair approximation, and every verdict should be treated, prima facie, as the result of honest judgment upon their part. They are the constitutional triers of the facts of a case, and courts should exercise great caution in interfering with their verdicts. Litigants must not be left, however, to their arbitrary will, and be without remedy in cases where verdicts can be accounted for only upon the theory that they are the result of an improper sympathy, or unreasonable prejudice. In such cases it is one of the highest duties of a court to interfere,

otherwise great wrongs will often result, and the party be remediless. * * * While absolute certainty as to the result of an injury should not be required, yet a mere conjecture, or even a probability, do not warrant the giving of damages for future disability, which may never be realized. The future effect of the injury should be shown with reasonable certainty to authorize damages upon the score of permanent injury. This was not done in this case. The evidence shows that the appellee is as likely to entirely recover, and, perhaps, in a short period of time, as she is to be permanently affected by the injury. To sustain a verdict like this one, under such circumstances, would often result in the grossest injustice, and its existence can be accounted for only upon the ground that the jury were swayed by prejudice or an improper controlling sympathy.'' In Louisville & Nashville Railroad Company v. Mattingly, 38 S. W. 686, 18 Ky. Law Rep. 823, Mattingly recovered a judgment for $10,000 for personal injuries. The physicians testified that the left leg of Mattingly was smaller than the right, and the left ankle seemed to be impaired, but there was no malformation of either ankle or leg, that he could not make all the natural movements with his ankle, and, when he stooped over, he seemed not to have good use of his back, and the muscles in the side of his back seemed swollen, and on examination of the urine blood was found in it; and, if this was caused by the injury, it was probably permanent and would grow worse and become chronic. The court said: ''The extent of his injuries is a matter of uncertainty under the proof, and it is doubtful if they are shown to be permanent, save, perhaps, that which renders one of his ankles somewhat less free in its movements than it was in its natural and orig-

inal state. * * * It seems to us clear that this verdict
is excessive, and strikes the mind at first blush as
having been superinduced by passion of prejudice."
In Illinois Central Railroad Company v. Houchins,
121 Ky. 526, 89 S. W. 530, 28 Ky. Law Rep. 499, 1
L. R. A. (N. S.) 375, a recovery of $10,500 was had.
Condensing the evidence, the court said: "A number
of physicians testified on the trial for the railroad
company that they had examined him carefully, and
with the aid of the X-rays, but could find nothing
wrong; that he was a fine insurance risk, and normal
in every way. On the other hand, a number of phy-
sicians testified for him that his spine was injured,
and that a lump had formed in the hip joint, causing
lameness and permanently disabling him from fol-
lowing his vocation as postal clerk at a salary of
$1,000 a year. According to the evidence for him
he was to a large extent a nervous wreck, while ac-
cording to the evidence for the railroad company he
is a healthy man and in normal condition. * * * It
is earnestly insisted that the verdict of the jury is
palpably excessive, the result of passion and preju-
dice. In view of the uncertainty of the evidence as
to the extent of the plaintiff's injuries, or as to what
his condition will permanently be, we are of opinion
that the verdict is excessive, and that on the whole
case a new trial should be awarded." In Watson v.
Brightwell, 82 S. W. 454, 28 Ky. Law Rep. 887,
Brightwell, who was severely injured, recovered a
judgment for $9,000, but the court ordered a new
trial upon the ground that it was excessive, saying:
"We have in many cases set aside verdicts where the
facts as to permanent injury were much stronger than
in this case." In H. P. Phillips & Co. v. Pruitt, 82
S. W. 628, 26 Ky. Law Rep. 831, appellee, a lady,

injured in an elevator accident, recovered $7,225.   In
reversing the case upon the ground that the damages
awarded were excessive, the court said: "The evi-
dence on this subject shows that appellee's ankle was
badly sprained, some of the ligaments torn; that
there was a fracture of one of the bones; that she
suffered severe pain, and was, at the time of the
trial, which took place some three months after the
injury, unable to walk without the aid of a stick, and
even then with great difficulty.   The testimony of the
physician in charge shows these facts, and also ex-
presses his opinion that her injuries will be perma-
nent.   But we do not understand that there will be
anything approximating a total loss of the use of the
limb, and, while appellee may never regain the full
strength of her ankle, and to this extent her injury
may be considered permanent, she may nevertheless,
be able to walk fairly well, and attend to her house-
hold duties."   In Southern Railroad Company v.
Goodard, 97 S. W. 392, 30 Ky. Law Rep. 126, a verdict
for $8,000 was held to be excessive, when it did not
appear from the evidence that the use of the injured
man's arm was totally destroyed, although there was
testimony to the effect that the injury was a perma-
nent one.   In Covington & Cincinnati Brdige Co. v.
Goodnight, 60 S. W. 415, 22 Ky. Law Rep. 1242, a
verdict for $9,000 was set aside as excessive; it not
clearly appearing that the injuries sustained were
permanent.

Following the rule announced in these cases, and
applying them to the facts of this case, we see no
escape from the conclusion that the verdict is exces-
sive, and for this reason a new trial is granted.

. Wherefore the judgment of the lower court is re-

versed, with directions to proceed in conformity with this opinion.        ,