### Carter Coal Company v. Dozier, et al.

(Decided May 25, 1916.)

#### Appeal from Knox Circuit Court.

1. Damages—When Excessive if Injury Not Permanent.—Damages in the sum of seven thousand dollars, awarded a boy eleven years old whose skull was broken in places, was excessive, in the absence of some evidence showing that the injury permanently impaired his health or his faculties.

2. Negligence—Licensees On Premises of Coal Company—Duty Owing to.—A coal company owes to persons on its premises who are mere licensees only the duty of exercising ordinary care to

save them from injury on account of its unsafe or defective appliances or premises, after their peril has been discovered.

P. D. BLACK and BLACK, BLACK & OWENS for appellant.

J. M. ROBSION for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Willie Dozier, a boy about eleven years old, was severely injured when a train of coal cars being operated by the appellant, Carter Coal Co., broke loose from the cable by which they were being propelled along an incline and ran down and against the coal tipple at the foot of the incline near which Willie was engaged in picking up coal. In a suit by his next friend to recover damages for the injuries so sustained, there was a verdict and judgment against the coal company for seven thousand dollars, and it appeals.

The entrance or mouth of the mine operated by the coal company was on the side of a mountain about five hundred feet from its base. At the base there was a coal tipple from which the coal taken from the mine was loaded into railroad cars. The coal company had two adjoining railroad tracks running from the tipple to the mouth of the mine, and on these tracks the coal was carried from the mine to the tipple in coal cars which were operated by a wire cable attached to a drum near the mouth of the mine. The custom was to let down four loaded coal cars and at the same time pull up four empty cars. The loaded cars going down the incline supplied the power that pulled up the empty ones.

An employe of the coal company stationed at the mouth of the mine controlled by levers the movement of the cars. There was also an employe at the foot of the incline near the tipple who assisted in the movement of the cars. The incline tracks were equipped with safety switches and devices for derailing cars if by any accident they came loose from the cable in being operated up or down the tracks, and these safety switches could be operated by a lever convenient to the employe at the mouth of the mine and also by a lever convenient to the employe at the tipple; and it was the duty of both of these employes whenever a car or train of cars in any way came loose from the cable to at once operate the safety switches so as to derail the cars and prevent them

from running down the track into and against the tipple.

The power was applied to the cars by the cable being attached to a hook under the body of one of the cars in the train, and on the day in question when a train of four loaded cars had been started down the incline by the employe at the mouth of the mine, and at the same time four empty cars had been started up the incline on the other track, the hook to which the cable was attached on one of the loaded cars straightened out, and when this occurred the cars came loose from the cable connection and ran down the incline at a high rate of speed and into and against the tipple.

It is also appears that a number of miners and their families lived near the tipple, and these miners were in the habit of getting coal for domestic use around the tipple, and on the day and at the time the cable connection broke, Willie Dozier, who had been sent by his mother to the tipple to get a sack of coal, was near the tipple, and when the cars ran into the tipple he was struck on the head by some part of the cars or the tipple, which was smashed into pieces by the force of the collision, and his skull was fractured.

The negligence charged in the petition was that the coal company failed to have its cars equipped with sufficient hooks; that the employes both at the mouth of the mine and at the tipple were guilty of negligence in not derailing the cars, and that the safety switches were out of repair. It was further averred that Willie Dozier was at the tipple by right of a contract between the miners and the coal company in which in consideration of a stipulated sum the miners and their families were permitted and authorized to get coal for domestic use about the tipple where Willie was when injured.

All of these allegations were put in issue by an answer, and in addition thereto it was averred that the company had forbidden the parents of Willie Dozier and the other miners to get coal at the tipple, and so Willie Dozier was a trespasser.

On the trial of the case there was some evidence introduced on behalf of Willie Dozier supporting all the charges of negligence set out in the petition, including the averment that Willie was present at the tipple by virtue of the arrangement between the coal company and the miners. On the other hand, the evidence for the

coal company tended to show that it was not guilty of negligence in any of the respects mentioned and that Willie was a trespasser.

No medical testimony showing the extent, character or permanency of the injuries sustained by Willie was introduced in his behalf, but his parents and other witnesses testified that his skull was fractured to such an extent that several small pieces of the bone covering the skull were broken and taken out by the physician who attended him. It was further shown that before the injury he was a bright, cheerful, intelligent boy, and that after recovering from the injury to such an extent that he could go about, his mind as well as his eye-sight was impaired.

The only physician who testified in the case was the doctor, who attended Willie, and the substance of his testimony is that although the boy was very seriously injured and some pieces of the outer skull bone had been removed, there was no permanent impairment of his health or any of his faculties, and the appearance and evidence of Willie at the trial gives some support to this opinion

In a case like this there should be clear and convincing evidence of the permanency of the injury to authorize a verdict for seven thousand dollars, and as the evidence fails to show that the injury sustained will permanently impair the health or any of the faculties of the appellee, the verdict is so excessive that for this reason judgment must be reversed.

Complaint is also made of the instructions. The court told the jury, in substance, that it was the duty of the coal company to exercise ordinary care to keep its incline, tracks, cars and appliances in a reasonably safe condition, and to so operate and control the cars as to keep the same in reasonably safe condition for the protection of persons rightfully in or about the tipple, such as employes or those who were invited to, or had purchased the right to, go about the tipple, and if they believed from the evidence that Willie Dozier was injured by the failure of the coal company to perform one or more of these duties, they should find for the plaintiff. They were further told that if under a custom of the employes of the coal company, and which was acquiesced in by it, the miners and their families had the right to go about the tipple and gather coal for domestic pur-

poses, then the company owed them the duty of keeping its cars and appliances in safe condition for their protection.

An important issue in the case was whether under an arrangement between the miners and the coal company they had the right to go on the premises of the coal company for the purpose of gathering coal. If there was not an arrangement or agreement of this kind between the miners and the coal company, then Willie Dozier, in going upon the premises, occupied the attitude of a trespasser or at best a licensee, and the company did not under the circumstances of this case owe him the duty of exercising ordinary care to keep its premises or appliances in reasonably safe condition. It only owed him the duty of exercising ordinary care to protect him from injury after his peril was discovered, and there was no evidence in the case authorizing an instruction on an issue like this. The theory of the plaintiff was that the coal company, for a consideration paid by the miners, consented that they and their families might get coal at the place where Willie was getting it when injured, and the jury should have been told, in substance, that they should find for the coal company unless they believed from the evidence that the miners, under a contract or arrangement with the coal company, had the right to gather coal about the tipple and that it was customary for the children of the miners, with the acquiescence of the company, to go about the tipple for the purpose of getting coal. On the other hand, if there was such an arrangement as this and the company had acquiesced in the conduct of the miners in sending their children to and about the tipple for the purpose of getting coal, then the coal company owed Willie Dozier the duty of exercising ordinary care to keep its appliances and premises in reasonably safe condition, and if it failed in this duty the law was for the plaintiff.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.