## Illinois Central Railway Company v. Basham.

(Decided February 28, 1919.)

### Appeal from Grayson Circuit Court.

1. Master and Servant—Personal Injuries—Evidence.—When a verdict for personal injuries is so large that it can be sustained only if the injuries are permanent, there must be positive and satisfactory evidence of permanency.

2. Damages—Excessive Damages.—A verdict of $10,000.00 held to be so excessive as to indicate prejudice or passion upon the part of the jury, because of the inconclusive character of the scant evidence of permanency of injuries asserted to have resulted from an accident which seemed trivial at the time and was followed only tardily by any symptoms of serious injury.

M. A. ARNOLD, L. A. FAUREST and TRABUE, DOOLAN & COX for appellant.

HAYNES CARTER and M. M. LOGAN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal from a judgment of $10,000.00 for personal injuries.

Although the instruction of which the defendant complains is erroneous in allowing damages for *any* negligence rather than that set up in the petition and described in the evidence, this error we are inclined to think could not have been prejudicial, because of another instruction which directed a verdict for defendant unless the jury believed the particular negligence relied on had

been proven; however, this question need not be further considered or decided, since we have concluded the verdict upon the evidence is so excessive as to necessitate a reversal and a new trial when the instructions can be more accurately prepared.

We find no merit in the contention that the court erred in refusing defendant a continuance because of the fact the injury had occurred only about sixty days before the trial, or in permitting the contradiction of the witness, John Cummings, or in its ruling with reference to the objection made to argument of counsel for plaintiff, so we shall confine ourselves to a consideration of the evidence as to the extent of plaintiff's injuries, it not being contended there was not enough evidence of negligence to carry the case to the jury.

Plaintiff testified he was 27 years of age; that before he was hurt by passing partially through the open hopper of defendant's car with the rock screenings that he was helping to unload, he was strong, able-bodied, weighed 156 pounds, and was earning $1.50 a day; that in the accident complained of he was embedded in the screenings up to his hips or lower abdomen; that while he felt some pain at the time, he continued to work at shoveling the screenings off the track and later at tamping ties until quitting time, a period of more than two hours; that he got "pretty sore" and suffered considerable pain in his stomach, back and legs, before he quit work, but that he told his boss, a Mr. Lewis, he didn't think he was hurt; that after he quit work he helped "pump" the hand car for about a mile to Caneyville, where he lived, without any complaint of being injured or suffering any pain; that that evening after he got home, he began to suffer pains in his "privates" and discovered he could not control his urine; that he was unable to go to work the next morning, and has been getting worse ever since; that his testicles have shrunken to about one-third their normal size; his left leg is paralyzed, urine "dribbles" almost continuously; that his weight at the time of the trial had been reduced from 156 to 111 pounds, and he was unable to do any work or even walk; that he first called Dr. Barnett to see him, on the second day after the accident and being dissatisfied with him, called Dr. Glascock, who thereafter treated him, and who stated he was first called into the case February 21st, the sixth day after the accident.

Dr. Glascock testified in substance that he found plaintiff suffering from cystitis and paralysis of the motor nerves and muscles in and about the lower abdomen, resulting in an enlarged prostate gland, the paralysis of the left leg, an inability to control his urine, passages of which contained a "bloody scab formation," a paralyzed condition of the organs of generation accompanied by a "perishing" of the testicles; that when he first examined him, he found evidences of contusions on the penis and near the end of the spine; that all these conditions could have been caused by traumatism, and were "bound to be permanent;" that he was nervous and had been growing worse continuously, except for an improvement in the condition of his heart, and had fallen off in weight from 156 to 111 pounds; that he frequently used a soft catheter to empty the bladder, but that this could not have produced cystitis.

Dr. Ozement, who saw plaintiff four or five times from February 25th to April 12th, in consultation with Dr. Glascock, stated that he was suffering from violent cystitis (which he defined as an inflamed condition of the bladder), accompanied by a "dribbling" of urine in which there were "little scabby looking things:" that he also found considerable tenderness over the lower abdomen and in the region of the spine and a flacid tender prostate gland; that there was some atrophy and loss of mobility in the left leg; that the testicles were smaller than the average size, which might have been normal; that these conditions might have been caused from an outside traumatism, and frequently result from other causes, but could not have been produced by such a catheter as was used.

Dr. Clark was called in consultation by Dr. Glascock about fifteen or twenty days after the accident, and found plaintiff very nervous; that his left leg was partially paralyzed, as was also his bladder, resulting in his inability to hold his urine; that the prostate gland was very much enlarged, the testicles "showed some atrophy" until the left one was about "one-third of what it should have been" while the right one "wasn't so much wasted;" that there is some variation in size in different men.

Dr. Arms examined plaintiff just before testifying and stated he found the left leg partially paralyzed, urine passing involuntarily every little while, a consid-

erably enlarged prostate gland, a shrinkage in the testicles, the right one being about 50 or 60 per cent of the normal size, and the left one even smaller; that both were soft and "doughy;" that plaintiff was considerably emaciated and very nervous.

It will be noticed no witness for plaintiff except Dr. Glascock, testified that any of the described conditions were permanent or not curable, and the fact that such conditions had developed and grown gradually worse during about two months, can hardly be accepted as evidence of permanency.

For the defendant, Dr. N. Barnett, who was called to see plaintiff on the second and third days after the accident, and who, with Drs. Givens and Deweese, examined him again about a month later, testified that he was unable to find any bruise or contusion or any evidence of an injury of any kind; that there was nothing abnormal about his testicles or leg; that the latter responded normally to reflex tests, as it could not have done had it been paralyzed; that he was medical examiner for the defendant at Caneyville, and as such examined plaintiff in the summer of 1916, just prior to his employment by defendant, and that as far as he could remember there were no differences in the size of his testicles upon the several examinations; that at the March examination plaintiff complained of and there seemed to be involuntary passages of urine; that when he saw him on the two days in February, plaintiff had not suggested a lack of control of his urine, or of any trouble with his leg, and complained only of pains in his right side and somewhere about his bladder.

Drs. Givens and Deweese corroborated Dr. Barnett as to the condition of plaintiff at the March examination made by them, and in addition testified that the passage of urine, if involuntary, might have been the result of either cystitis or paralysis of the motor muscles or nerves, and if from cystitis, was curable, but if from paralysis it might not be; that they saw no indications of any paralysis and did not think cystitis could be produced by traumatism, but might result from an enlarged prostate gland or the use of a catheter.

Dr. Price examined plaintiff during the trial, and stated that after a thorough examination he could find no evidence of any injury to his body; that there was no enlargement whatever of the prostate gland; that his

testicles were soft and normal though below the average in size; that if they had shrunken from atrophy they would have been hard, which is not denied by any witness; that his left leg responded normally upon reflex tests; that the muscles contracted normally and it was not paralyzed; that plaintiff was simply sick and suffering from cystitis, which was curable, and most often caused by use of a catheter; that the pelvic structure is such that traumatism or force from the outside could not have produced any of the symptoms described.

Unless we are to accept Dr. Glascock's blanket assertion that all the conditions described by him are "bound to be permanent," cystitis is a curable disease because most of the physicians so state, and no one denies it. Dr. Glascock states plaintiff has this disease Dr. Ozment states that when he first saw plaintiff he was suffering from violent cystitis, which is shown may have resulted from numerous causes, although the evidence is quite contradictory as to whether or not it could be caused by such an accident as happened to plaintiff, so if the jury believed that his most distressing inability to control the passage of his urine resulted from cystitis, which is decidedly the most reasonable deduction from all the evidence, and that this disease was the result of the accident, this condition could not have authorized a verdict for permanent injuries, because the disease is curable; nor is there any evidence that an enlarged prostate gland, which some of the witnesses state he had and might have been responsible for the condition, is not curable. Only if the condition resulted from a paralysis of the motor muscles and nerves which control the bladder and urethrea, about which the evidence is most conflicting, is there any evidence it is not curable, and of this the evidence is not satisfactory as it amounts to only that if from paralysis the trouble might not be curable.

Every witness who testified concerning the reflexes of plaintiff's left leg, about the paralysis or any injury of which the evidence is very conflicting, states that it responded normally under test, except Dr. Clark, who states the reflex action seemed to be exaggerated, and that this proved the leg was not totally paralyzed; but that he believed there was a partial paralysis, because there was no sensation and plaintiff did not seem to be able to use it. Several witnesses state a leg can not be paralyzed that responds to the reflex tests, and this evidence is not contra-

dicted, so we think the most that can be made of the evidence for plaintiff as to his leg, is that he could not use it at the time of the trial and had been unable to do so for some time theretofore, but there is no evidence its use is permanently impaired, except the blanket statement of Dr. Glascock, which is overwhelmed by the evidence as to the proper tests of such impairment and the results obtained from the tests when made.

While the evidence proves that plaintiff's testicles were smaller than the average and one of them, and possibly both, is so shrunken as to suggest the possibility that they are as one witness stated "perishing," we think the evidence is wholly insufficient to warrant the conclusion that there is or will be a permanent loss of virility, because all of the witnesses who testify as to whether they are soft or hard say they are soft, and no one contradicts Dr. Price's testimony that if they were shrunken from atrophy, they would be hard.

The verdict for $10,000.00 is grossly excessive, unless plaintiff's ability to labor and get about has been permanenetly and seriously impaired, and in view of the tardy development of any symptoms of serious injury, the short time that elapsed between their development and the trial, and the inconclusiveness of the scant evidence of permanency of any of the asserted results of the accident which seemed so trivial at the time, we find ourselves unable to avoid the conviction that under the circumstances, the verdict is so excessive as to indicate passion or prejudice upon the part of the jury. When a verdict for personal injuries is so large that it could be sustained only if the injuries are permanent, there must be positive and satisfactory evidence of permanency. Illinois Central Ry. Co. v. Houchins, 121 Ky. 526, 89 S. W. 530; Watson v. Brightwell, 82 S. W. 454; L. & N. R. Co. v. Reaume, 128 Ky. 90, 107 S. W. 290; Louisville Son. R. Co. v. Minogue, 90 Ky. 369; 14 S W 357; L. & N. R. Co. v. Mattingly, 38 S. W. 686; Ky. Wagon Mfg. Co. v. Shake, 137 Ky. 742, 126 S. W. 1095.

Wherefore the judgment is reversed and the cause remanded for a new trial.