# Chesapeake & Ohio Railway Company v. McCullough.

(Decided December 19, 1930.)

BROWNING & REED for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

There have been three trials of this case and this is the second appeal. At the first trial the jury returned a verdict for the plaintiff which was set aside by the trial court. The facts are fully set out in the opinion on the first appeal, which is reported in 230 Ky. 478, 19 S. W. (2d) 1076. On that appeal a judgment in favor of appellee for $5,000 was reversed upon the ground that it was excessive. At the last trial the jury returned a verdict in favor of appellee for the sum of $10,000, and from the judgment entered thereon this appeal is prosecuted.

The chief ground urged by appellant on this appeal for a reversal of the judgment is that the verdict is excessive, but before discussing that ground we shall consider appellant's complaint of a ruling of the trial court that the testimony of Dr. Eaton on previous trials was admissible only as affecting the credibility of the witness, it being appellant's contention that, the testimony of this witness on the last trial being so radically

different from and contradictory of the testimony, given by him on previous trials, and the appellee's claim being inseparably bound to his testimony, his testimony given on the previous trials should have been received as substantive testimony in the case, and that the court erred in instructing the jury that such proof was competent only for the purpose of contradicting the witness and affecting his credibility. On previous trials Dr. Eaton testified that appellee had varicose veins which in his opinion resulted from the injuries received in the accident when he jumped from his automobile to avoid being struck by an aproaching train of appellant, and that the varicose condition of the veins existed on the day following the accident. As stated in the opinion on the former appeal, it was established by the evidence that varicose veins are of slow development and, while they may result from traumatic injury, they will not develop within the short period of time fixed by Dr. Eaton in his testimony on the previous trial.

On the last trial Dr. Eaton testified that when he saw appellee on the day following the accident he was suffering from a bruise, and that four to ten days thereafter he developed phlebitis, and that after the swelling had disappeared, which occurred within a month, the varicose veins were visible. It is insisted that by twice introducing Dr. Eaton as a witness appellee vouched for his credibility and for the truthfulness of his testimony, and as the facts testified to by Dr. Eaton on the last trial were wholly different from the facts testified to by him on the two former trials, the change in his testimony directly affected the bona fides of appellee's claim, and for this reason it was error for the court to limit the proof of the inconsistent testimony given by the witness on former trials to its effect on the credibility of the witness himself. Appellant's contention is based on the theory that the previous testimony of the witness constituted admissions upon the part of appellee, who procured its introduction, and was admissible as such. In other words, it is contended that the evidence constituted what is sometimes denominated a vicarious admission. The facts testified to by Dr. Eaton, however, on the former trials were not such as to bring his testimony within the rule which renders the statements of a person other than the party himself receivable as vicarious admissions. What appellant insists are contradictions in his testimony are at most, different conclusions drawn by

him from the facts. Appellee claimed that his varicose veins had resulted from the injury. Dr. Eaton testified on the former trial and on this trial that they did so result. His statement as to how soon they developed after the injury was received was a conclusion which could not be attributed to the appellee. The exact date when the varicose condition developed was not an element essential to appellee's claim. It appears that the witness on the former trials confused the terms "phlebitis" and "varicosity." He then stated these were synonymous terms, but on the last trial he admitted phlebitis is an inflamation of the veins which is frequently followed by varicosity. Under the circumstances the court properly instructed the jury that the testimony of Dr. Eaton given on the former trials was to be considered only for the purpose, if it did so, of affecting his credibility as a witness.

This brings us to the question: Is the verdict excessive? The testimony of the physicians who testified on the former trials as to the nature and extent of appellee's injuries was substantially the same on the last trial as it was on the preceding one. Dr. Eaton stated that, in his opinion, appellee's present condition "hinders him in his labor or work" about 50 per cent. This estimate of the extent of appellee's disability is based on the same condition testified to by Dr. Eaton on the former trial.

The deposition of Dr. C. E. Vidt of Ironton, Ohio, a specialist on nervous diseases, was taken by appellee on January 30, 1930, and read on the trial. He had not been a witness at the former trial. Dr. Vidt began treating appellee in February, 1927, and continued to treat him until his deposition was taken. In answer to a hypothetical question he expressed the opinion that the varicose condition was the result of the alleged injuries to appellee's leg, but he assumed that the skin had been broken. In expressing his opinion as to the cause of appellee's nervousness, he said:

"Well, I didn't pay so much attention to the varicosity, it being a local injury to the leg; I didn't determine it as being the cause for his nervousness. When I first saw him he showed localized varicosity on the calf of the right leg, yes, the right, if I am not mistaken, and while this disturbance could have been the cause of an injury as described by him to the

leg, however, I don't think his nervousness could be attributed to that varicosity. His trouble, the nervous disturbance he had, was due more to the shock that he would receive at the time of the accident, and this would be much more reasonable to believe than that his nervousness would come from the varicose veins.''

He also testified that appellee's nervous condition had materially improved. His testimony on this point was as follows:

"Q. Coming back to the nervous condition of Mr. McCullough. Is he any better or any worse, or would you state as to his present condition? A. I'd state Mr. McCullough's condition is very much better, his nervous disturbance is better.

"Q. What can you say as to whether or not he will recover entirely from that? A. That would be really a hard matter to say, nervousness in men vary, it varies in different individuals, but I think Mr. McCullough's condition will improve, gradually but slowly improve.

"Q. Would you venture an opinion as to whether or not it will remain permanent with him? A. It may and it may not, but I think his condition will get better than it is now, he had made a good deal more improvement in the last four or five months than he did in the first year all together, that I treated him.''

The injury which appellee sustained only caused a bruise and not a break in the skin. The evidence shows that phlebitis may result from a traumatic injury and permanent varicosity may subsequently develop, but the great weight of the evidence is to the effect that phlebitis, which is inflammation of the vein wall resulting from infection, cannot result from an injury unless there is a break in the skin which would permit the entrance of infection. However, there is some evidence to the contrary, and the question as to whether or not the varicose veins in appellee's leg would result from the injury he sustained, was one for the jury. But, as said in the opinion on the former appeal, ''to sustain this verdict, in view of its size, it would be necessary for Mr. McCullough to establish by positive and satisfactory evidence that his earning power has been permanently

impaired.'' The testimony of the physicians, including Dr. Vidt who was introduced by appellee, shows that the varicose condition of appellee's leg can be improved, and probably a complete cure effected, by a minor operation.

In view of the grave uncertainty as to whether or not appellee's present condition is attributable in any measure to the injuries alleged to have been received by him in the accident at the railroad crossing, which seemed so trivial at the time, and the unconvincing nature of the evidence as to the extent and permanency of this condition, we conclude that the verdict of $10,000 is grossly excessive and that the jury could have returned such a verdict only as the result of passion and prejudice. When a verdict for personal injuries is so large that it could be sustained only if the injuries are permanent, there must be positive and satisfactory evidence of permanency. Chesapeake & Ohio Railway Co. v. McCullough, supra; Louisville & Nashville Railroad Co. v. Lewis, 211 Ky. 830, 278 S. W. 143; Louisville & I. Railway Co. v. Murphy, 190 Ky. 795, 228 S. W. 442; Illinois Central Railway Co. v. Basham, 183 Ky. 439, 209 S. W. 362. The evidence in this case fails to measure up to that rule.

Wherefore the judgment is reversed, and the cause remanded for a new trial.

The whole court sitting, except Judge WILLIS.