## Consolidated Coach Corporation v. Eckler.

(Decided March 21, 1933.)

310

R. W. KEENON and L. M. ACKMAN for appellant.

F. A. HARRISON and ASA M. SAMUELS for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Estill B. Eckler, 19 years old, by his next friend, George Eckler, instituted this suit in the Grant circuit court, seeking to recover damages of appellant, Consolidated Coach Corporation, for personal injuries received, caused by the alleged negligent operation of a bus belonging to appellant.

Appellee, plaintiff below, alleges by his petition that on the 27th day of May, 1931, while driving northwardly on the Dixie Highway, a public thoroughfare in Grant county, Ky., and about one-half mile south of Dry Ridge, he was driving a team of horses hitched to a wagon with a drill tied behind it, and that appellant through its agent in charge of, and operating its bus, negligently ran into the rear of the drill, which was hitched to the rear of plaintiff's wagon and causing plaintiff to be thrown from the wagon, thereby injuring his leg below the knee, and also an injury to the sciatic nerve; that he suffered great pain and misery because of said injury and lost, to some extent, the use of his leg, and that said injury is permanent. He further alleges that, because of the said injury, he lost time in his crop, and that, by reason of the loss of such time, he is thereby damaged in an additional sum of $200, and that he expended doctor bills in the sum of $7, and prays that he recover of appellant the total sum of $2,707.

The first paragraph of defendant's answer is a traverse of the petition; in paragraph 2 it pleads contributory negligence; paragraph 3 sets out specific acts of negligence on the part of plaintiff, in that plaintiff negligently and carelessly failed to equip or have attached to the rear of his wagon or drill hitched thereto any light or other signal required by law, such as would indicate its presence upon the highway; and further alleges that, at about the same time appellant's agent or driver in charge of the bus was approaching the wagon, the lights of another car, being operated by some unknown person proceeding in the opposite direction and

meeting the bus, prevented the driver of defendant's bus from seeing the wagon of the plaintiff, and for these reasons the collision or striking of plaintiff's wagon was unavoidable upon part of the defendant.

A jury trial was had, and resulted in a verdict for appellee in the sum of $2,707, the full sum prayed for. Motion and grounds for a new trial were filed and over-ruled. This appeal results.

The evidence is conflicting as to the time of day the accident occurred; that is, whether it was dark or daylight. Charlie Lee, witness for appellee, testified that he opened the gate at his place and assisted appellee in getting his wagon and team onto the highway and saw him start northwardly on the east side (the right) of the highway; that he then turned around and was closing the gate and did not notice the bus pass; that he heard the crash and looked and saw the bus had struck appellee's wagon, a distance of about 125 yards from the gate. He was asked this question: "What time of day or night was it when he left your place? Answer: Well, it was not dark; I could see him very plain over there." The appellee says it was not dark, but he admits that the lights of the bus were on. The driver of the bus and a number of passengers who were on the bus testified that it was dark. Appellee admits that he did not have any light, flag, or other signal on the rear of his wagon or the drill.

It is insisted for appellant that it was dark at the time of the collision, and appellee's failure to have a light on the rear of his wagon as required by law (Ky. Stats. Supp. 1933, sec. 2739g-24) was the proximate cause of the collision, and for this reason appellee is not entitled to recover, and the court should have sustained its motion for peremptory instruction. The evidence is conflicting as to whether or not it was dark or daylight, and further shows that the road was straight a distance of about 200 feet south of the point of the accident.

Upon examination of the evidence, we conclude that it presented an issue for the jury, and for this reason we deem it unnecessary to extend this opinion by a detailed discussion of the evidence.

It is insisted for appellant that the evidence is insufficient to warrant the finding of the jury as a whole,

and particularly to find for permanent injury, or the sum of $200 for the alleged loss of time in his crop. Appellee states that, as a result of the injury, he lost considerable time in his crop and had to hire some help. On this point we note the following questions and answers thereto:

"Question: Were you able to work last summer? Answer: No, sir, not to do myself justice, but I worked what little I was able because T was just compelled to, but I had to keep hired help from the time the bus hit me until I got my tobacco where I could take care of it myself.

"Question: State whether or not you had to employ help where you would not have had to employ help if you had not been hurt. Answer: I had to hire more help than I would in setting it out than I would have."

When asked about the value of the time lost in his crop, his only answers were, in substance, that he did not know, or that he did not know how to estimate it. It appears that his counsel made diligent effort to have him fix some value upon the time lost in his crop, but was unable to get any definite answer. But he finally said his time would be worth $26 a month. But he admits that he worked as much as he was able, and does not state the value of the time lost, or the difference in value between the labor he actually performed and the value of the labor he would have performed if he had not been partially disabled.

Appellee says that he paid out about $200 for hired help in his tobacco crop, and says that he was compelled to hire more help than he would have if he had not been injured, thereby indicating that he probably would have hired some help notwithstanding his injury, but does not show how much or what portion of the alleged $200 expenditure for help was necessitated or expended by him by reason of his injury. It is reasonably apparent from the record that plaintiff lost some time in his crop, but the evidence is insufficient to establish any definite or approximate value of the time lost, if any, and was insufficient to warrant an instruction upon this point.

In view of his evidence as a whole on the question of loss of time, we conclude that the jury was left to

merely guess at the value of his time. In the case of Louisville Ry. Co. v. De Marsh, 203 Ky. 231,·262 S. W. 13, 14, the court said:

> "But after all the jury is not permitted to invade the field of speculation or to base its verdict on surmises not supported by some tangible and substantial testimony."

The further point is made that the evidence is insufficient to sustain a finding for permanent injury. Appellee introduced Dr. Eckler, who testified that he was called to treat appellee on the morning after the injury. In describing the nature of his injury, Dr. Eckler testified that, when he first saw appellee, he had an injury to his right leg over the shin bone; that there was enormous swelling and he could scarcely walk; that there was enormous swelling over the bone, and inflammation of the periosteum, or periostitis, and some days after that subsided sciatica developed. He defines sciatica as an inflammation of the large nerve that runs down the leg, and that appellee was suffering severe excruciating pain from this sciatic condition. Dr. Eckler was asked this question:

> "You say now that Estill (appellee) is suffering from the injury to the sciatic nerve? Answer: Yes, sir, I think an injury to the sciatic nerve.
>
> "Question: Describe his suffering, Doctor. Answer: It was just excruciating pain, the muscles would draw his leg up so he couldn't rest any.
>
> "Question: Will you state to the jury, in your opinion, based on your knowledge of your examination, and based on your medical knowledge, whether or not his injuries are temporary or permanent. Answer: Well, it is not healing up any. This sciatica was caused by injury, I couldn't tell about it, it might get all right, again it may not, there is some trouble with the muscles of the leg— the leg is not as large as the other leg.
>
> "Question: Just state to the jury whether or not, in your opinion, that the injury that he has is temporary or, in other words, whether he will be rid of it in a few days or a few months, or whether it is permanent. Answer: As I stated before, you cannot really say about those injuries lots of the times; if it was due to a toxic condition, we know that will get well in time, they usually do, that has

been my experience. But an injury to the nerve, I couldn't say whether it will be permanent, by all the symptoms there.''

Dr. O'Hara was introduced in behalf of appellant. In his testimony we note the following questions and answers:

"Question: Should one of that age have sciatic neuritis or sciatica, does it readily yield to proper treatment or not? Answer: Don't have much trouble with them if you put them to bed, take care of them, if they do what you want them to do.

"Question: After receiving proper treatment and becoming convalescent, I will ask you to state whether or not they are subject to recurrent attacks. Answer: No, not if they take advantage of their treatment, rest, take care of themselves, they get well from that just as well as anything else.

"Question: I will ask you if one who is properly treated and takes care of himself, would suffer sciatic neuritis as a permanent disability. Answer: I think not, no, not necessarily.

"Question: State how long the first attack usually lasts in one 19 years old, 18 or 19 years of age. Answer: I should say about three or four weeks, maybe not so long. I should think three or four weeks would cover the treatment. Of course, there are always exceptional cases, you know, but then we only speak of the average.''

It has been repeatedly held by this court that testimony of professional or expert witnesses to the effect that injuries might be permanent or that there is a possibility of permanency is not such positive and satisfactory evidence required to take to the jury the question of permanent injury. Herndon v. Waldon, 243 Ky. 312, 47 S. W. (2d) 1047; Cincinnati, N. O. & T. P. R. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075; Chesapeake & O. Ry. Co. v. McCullough, 236 Ky. 647, 33 S. W. (2d) 655; Kentucky T. & T. Co. v. Downing, 152 Ky. 25, 153 S. W. 32.

In the case of Illinois Central Ry. Co. v. Basham, 183 Ky. 439, 209 S. W. 362, 364, the court said:

"When a verdict for personal injuries is so large that it could be sustained only if the injuries are permanent, there must be positive and satisfactory evidence of permanency."

To the same effect, Louisville & I. R. R. Co. v. Murphy, 190 Ky. 975, 228 S. W. 442; Carter Coal Co. v. Dozier, 170 Ky. 374, 186 S. W. 140.

In the case at bar, the jury found for appellee the sum of $2,707, the full amount sued for. He alleged in his petition that his injuries were permanent, proof was taken along that line, and the court gave an instruction relating to same. It will be presumed that the jury included in its verdict damages for permanent injury. The strongest evidence in favor of appellee relating to the permanency of his injuries is that of Dr. Eckler. When asked whether or not the injuries were temporary or permanent, he merely said, "I couldn't tell about it; it might get all right, again it may not. * * *" This evidence, measured to the authorities herein cited, is utterly insufficient to warrant the submission to the jury the question of permanent injury, and the court erred in so doing.

The instructions given by the court as a whole are questioned in brief for appellant, but, with the exception of the submission to the jury the question of permanent injury and the value of time lost by appellee in his crop, the instructions are substantially correct.

On a retrial of the case, if the evidence is substantially the same as in this trial, the court will not submit to the jury the questions of permanent injury and alleged loss of time of appellee.

Judgment is reversed and remanded for proceedings not inconsistent with this opinion.