## Louisville & N. R. Co. v. Hooker.

(Decided Nov. 20, 1936.)

ASHBY M. WARREN, MURRAY L. BROWN and THOMAS D. TINSLEY for appellant.

R. L. POPE, D. M. BINGHAM and J. O. BAKER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant operates a branch line of railway between Barbourville and Manchester. Some time in April, 1934, appellee purchased tickets for herself and two children at Barbourville for a flag station between the above-named points, known as "Rhode Island," but called "Rodonnell" throughout the record.

Appellee met with an injury at or near Rodonnell, caused by falling from the steps of the coach, and which injury she charges was directly due to the careless and negligent operation of the train at or about its stopping point. The appellant denied negligence and pleaded that such injury as appellee suffered, if any, was due to her negligence.

Upon submission of the case on proof and instructions given, the jury returned a verdict for appellee in the sum of $2,500. Judgment was entered accordingly after motion for a new trial was overruled. The railroad company appeals.

We find it necessary to consider only one ground urged upon motion for a new trial, and that is No. 5, wherein it is insisted that the sum awarded as damages is excessive.

It will serve no purpose to detail the incidents immediately surrounding the accident which caused the injury, further than to say that appellee did fall from either the bottom step, or the second step from the bottom, of the passenger coach, to the platform which was made of gravel, or gravel and cinders.

Describing the fall from the step and the injury resulting therefrom, appellee says that when she fell her right knee and hip struck the ground, "It hurt my knee and hip. It seemed like it knocked my kneecap up; my knee was bruised and it hurt me in my side. It hurt me in the back and in the middle of my neck. It addled me until I hardly knew anything until the next day. I went to bleeding from the nose."

Appellee says that her health was good prior to the accident; that her weight, at the time of the trial, had dropped to 135 pounds. She admits that prior to the accident her back "hurt a little." Since the accident she had not done any cooking, washing, or "hoeing in the garden." She says she had trouble with one leg and that in walking one leg gives out at the hip. She also claims that she has had some difficulty in sleeping.

After the accident appellee was taken to the home of her daughter, who lived near Rodonnell, and remained there several days and then went to her home. The daughter describes the knee as "bruised and bleeding a little." She applied linament to the injured knee and hip. This witness says her mother was in good health prior to the accident, and that she saw her two weeks after the accident when Dr. Wilson was treating her; that she saw her again about a month later; and that she was "up part of the time, but had to rest." Other witnesses describe the knee as "bruised, skinned up and bleeding."

The day after the accident, appellee went to Manchester and was treated by Dr. Anderson. This physician examined her, and from his notes testified in substance:

"I found the skin was grained on one knee. She complained of a pain extending up the left leg on the inside of the thigh. Pain in the muscles of her back and soreness in the muscles on the right side of the abdomen. Her muscles were sore, and the muscles of the abdomen were sore. Her knee was injured, the skin was kind of grazed, rubbed up, not knocked off at all."

He also testified that the pains which he described could have been due to her fall from the train. He only saw her twice, the day after the fall and a week later, and he gave no medicine except to relieve pain, "because medicines wouldn't do any good." He expressed the

opinion that she was not permanently injured; that he was satisfied there was nothing more than the abrasion of skin on the knee and a straining of muscles, and said:

"The strain on a joint or muscle will practically always get well. A more severe one will be longer. But I have never seen one that didn't get well in my experience."

After appellee went to her home she called in Dr. Wilson. This doctor said his examination disclosed "a good many subjective symptoms." Asked if he had found anything wrong with her back, or back of her neck, or her hips, he said that he had discovered nothing objective. This doctor had seen appellant in April, 1935, and as a result of an examination found her not to be in a "very good physical condition." It seems that Dr. Wilson had treated appellee from a time prior to, or at least from the time of the injury up until the date when he testified. He said that during that time "I doctored her for what I thought she needed." When asked what he had treated her for, he replied, "I don't like to tell what I treat folks for all the time; you are not supposed to," indicating rather clearly that Dr. Wilson was treating appellee for some complaint other than such as might have resulted from the fall.

It is noted that the court on this proof instructed the jury, if finding for appellee, to find damages for such injury as might appear from the proof to be of a permanent nature. We do not think the proof justified such an instruction. There is a lack of proof which would justify the jury in concluding that appellee was permanently injured, and the size of the verdict is such as to at once strike the court that the jury took into consideration this element of damages. If appellee was not permanently injured, the verdict was excessive. She does not set up or prove any grounds for special damages. Where no more injury is shown than was shown here, the presumption arises that the jury included in its verdict damages for permanent injury. Carter Coal Co. v. Dozier, 170 Ky. 374, 186 S. W. 140; Consolidated Coach Corp. v. Eckler, 248 Ky. 309, 58 S. W. (2d) 582; Illinois Cent. Railway Co. v. Basham, 183 Ky. 439, 209 S. W. 362; Chesapeake & O. Ry. Co. v. McCullough, 230 Ky. 478, 19 S. W. (2d) 1076. In Consolidated Coach Corp. v. Phillips, 236 Ky. 823, 34 S. W. (2d) 722, 724, this court said:

"Whilst it is the exclusive province of the jury to fix damages, and this court is reluctant to interfere with a verdict assessing compensation for personal injury, it is essential that the evidence show substantial injuries in order to sustain a substantial judgment."

For recent cases in which we have held damages excessive, see Jefferson Dry Goods Co. v. Dale, 257 Ky. 501, 78 S. W. (2d) 305; Lexington & E. Ry. Co. v. Robinson, 186 Ky. 739, 216 S. W. 86; Elkhorn Seam Collieries v. Craft, 207 Ky. 849, 270 S. W. 460; Middleton v. Frances, 257 Ky. 42, 77 S. W. (2d) 425. These may be compared with cases in which, for injuries somewhat similar to the injury shown here, we have held verdicts not to be excessive. Goldberg v. Wunderlich, 248 Ky. 798, 59 S. W. (2d) 1018; Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310; Huls v. Dalzell, 252 Ky. 13, 66 S. W. (2d) 28.

The award of the jury here is obviously excessive, and for this reason we are compelled to reverse the case, reserving all other questions presented.

Judgment reversed, with directions to grant appellant a new trial consistent herewith.