## Herndon v. Waldon.

(Decided March 25, 1932.)

ROBT. R. FRIEND and HUNT & BUSH for appellant.

SHUMATE & SHUMATE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Broadway street in Irvine, Ky., connects that city with Revenna, an adjoining one, and it is crossed at right angles by Hudson avenue, which latter is on a decline as it approaches Broadway street. On a night in June, 1928, at about 10 p. m., the appellee and plaintiff below, Ola Waldon, as an invitee of Mrs. Frank Miller, was riding in the latter's automobile on Hudson avenue, and after entering upon Broadway street the automobile of appellant and defendant below, Roy Herndon, traveling on Broadway street, collided with the rear of the Miller automobile where plaintiff was seated, and as a result thereof she was thrown therefrom on to the street and considerably injured. The only broken part of her body that she received was a dislocation or break in her pelvis bone. The other injuries consisted in bruises, jars, and possibly a wrench to her back; but the evidence, including that of the physician witnesses, makes it reasonably certain that she will sooner or later become normally restored except, perhaps, the adjustment of the pelvis bone, which the examination by the physicians made without the assistance of an X-ray photograph, led them to believe was maladjusted in such a way that it was possible for it to permanently remain so, and they testified that in that one particular the injury might be considered as permanent; but they did not and would not say that such particular permanent injury would also permanently impair plaintiff's power to earn money, or would permanently give her pain. They were cautious not to do so.

One of the professional witnesses said, when asked concerning it: ''It would be next to impossible to hazard a guess as to what this particular case would do.'' He was then asked as to the probable duration of the condition of plaintiff, and he answered: ''As compared to other injuries, the duration of pelvic injuries and the tendency towards permanency is much greater, but as I said before, no one knows how long any particular pelvic injury might last.'' Clearly, his answer related to the injury to plaintiff's pelvic bone and so gave his opinion as to the probable duration of such maladjustment. He furthermore said that he thought her impairment of power to labor and earn money would exist for a long period of time.

Another physician, testifying upon the same point, said: "'Well, *if* she had a fracture of the pelvis, and *if* there was deformity about the pelvis that would be permanent, any growth of those bones together, leaving some deformity would be permanent.'" (Our emphasis.) He was then asked: "How would that affect her power to labor and earn money? . . . To which he answered: "That would depend a great deal on the amount of deformity and the amount of lameness it would cause . . . I don't know that I could be very positive about that."

Plaintiff filed this action against defendant in the Estill circuit court to recover damages for her injuries, which she alleged were produced through the negligence of defendant. He answered denying any negligence on his part and pleaded contributory negligence on the part of plaintiff. An amended answer pleaded an ordinance of the city of Irvine declaring Broadway street a boulevard, thereby giving to travelers on it the right of way, and imposing the duty upon those entering it over intersecting ones, including Hudson avenue, to stop before entering upon Broadway street, and that the driver of the automobile in which plaintiff was riding failed to observe that provision of the ordinance and suddenly came in front of plaintiff, who was operating his car with ordinary care, and because of which the injury was unpreventable, and he was not liable. Following pleadings made the issues, and upon final submission the jury under the instructions given by the court returned a verdict in favor of plaintiff for $4,000, which the court declined to set aside on defendant's motion for a new trial, and from the judgment rendered thereon he prosecutes this appeal.

But one ground is argued by counsel for a reversal of the judgment, and it consists in criticisms of the instructions submitted to the jury, and to which defendant objected and excepted. That sole ground is divided into: (a) Error of the court in authorizing the jury to return damages for permanent impairment of plaintiff's power to earn money, and (b) error in the phraseology of instruction No. 6, whereby the doctrine of the "Last Clear Chance" was submitted.

The testimony with reference to the permanency of plaintiff's injuries has heretofore been recited. It appears therefrom that, while the injury to plaintiff's

pelvic bone may be what may be termed physically permanent, yet the testimony contains nothing more than a possibility or probability that any impairment of her power to earn money is or will be permanent. Permanent injuries, for which a recovery may be had in actions of this character, are those that are reasonably certain to be followed by permanent impairment to earn money, or producing permanent and irremedial pain, and to authorize a recovery for such permanent impairment there must be positive and satisfactory evidence thereof. Otherwise, the jury would be permitted, like the witnesses testifying to it, to invade the field of speculation, and in many instances base its verdict upon unsubstantiated facts which might later turn out to be wholly unfounded. In the absence of such proof, the other elements of recovery are sufficient to amply compensate for the injuries sustained by the particular plaintiff in the way of mental and physical pain, their probable duration, loss of time, hospital and physicians' fees, and any other allowable temporary element; and if they are to be augmented by the character of permanent injury for which compensation may be had, it should be made to clearly appear that such permanent impairment existed or the evidence bearing thereon should be of such a nature as to render it reasonably certain that plaintiff was so permanently injured.

Two of the latest cases from this court so declaring are Cincinnati, N. O. & T. P. R. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075, and Chesapeake & O. Ry. Co. v. McCullough, 236, Ky. 647, 33 S. W. (2d) 655. Many prior ones are referred to in those opinions, and in the Ross one a brief statement of the evidence bearing upon the permanent quality of plaintiff's injuries in many of our prior cases is set forth, and from which it appears that the testimony to establish the permanency of the particular involved injuries was more convincing in support of it than is the testimony found in this case. It is especially so in the cases of Kentucky T. & T. Co. v. Downing, 152 Ky. 25, 153 S. W. 32; Illinois C. R. R. Co. v. Basham, 183 Ky. 439, 209 S. W. 362; Louisville & N. R. R. Co. v. Murphy, 190 Ky. 795, 228 S. W. 442; and Carter Coal Co. v. Dozier, 170 Ky. 374, 186 S. W. 140.

In the Downing case the point at which plaintiff's arm was broken was considerably enlarged, and which the doctors testified would be permanent; but there was

no evidence that such enlargement would materially interfere with plaintiff's power to earn money, or produce permanent pain. In the Dozier case plaintiff's skull was fractured, and several pieces thereof were removed, which, of course, left him permanently deformed physically, but there was no satisfactory evidence of his permanent impairment to earn money, nor that he would permanently suffer pain therefrom, and in all of those cases we held that an instruction for recovery for permanent impairment should not have been given. We think the doctrine of those cases is controlling here and that the court erred in submitting to the jury that part of the instruction complained of in argument (a).

The criticism made of instruction No. 6 in argument (b) is that it did not require the jury to believe that defendant's negligence if any, after he discovered plaintiff's peril, was the proximate cause of her injury. On the contrary, it permitted a recovery upon the sole ground of his failure to take the necessary precaution to prevent the collision and consequent injury after discovering her peril, or after it should have been discovered by the exercise of ordinary care on his part, regardless of whether such precautions would or would not have prevented the collision. Counsel for plaintiff argue that instruction No. 1 said to the jury that in order for plaintiff to recover, defendant's negligence as therein described, if any, should have been the proximate cause of the injury to plaintiff and that it, when read with instruction No. 6, cured the defect in the latter. But we do not agree with that contention, since instruction No. 1 only pointed out defendant's duty toward one on the highway and whose situation was not the result of his or any other person's negligence. It defined defendant's duty as a traveler on the highway generally, and did not in any manner deal with a sudden and unexpected emergency producing a perilous situation and calling for an observance of the "Last Clear Chance" doctrine. On another trial instruction No. 6, will be corrected so as to conform to the views herein expressed.

Wherefore, the judgment is reversed, with directions to grant the new trial, and for proceedings consistent with this opinion.