## Sullivan v. Saylor.

Oct. 3, 1939.

J. S. Sandusky, Judge.

B. J. Bethurum and Robert B. Bird for appellant.

Williams & Denny for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment for $2,500 for personal injuries sustained by the appellee, Mrs. Lelia Saylor, a resident of Mt. Vernon, in an automobile collision with the car of the appellant, Dr. M. J. Sullivan, of Chicago, on U. S. Highway No. 25, at a bridge over Round Stone Creek in Rockcastle County in the late afternoon of February 9, 1937. A reversal of the judgment is sought only on the ground that it is excessive and contrary to the evidence.

The plaintiff claimed that the defendant's car approached at an excessive speed and when the brakes were applied the back end skidded into the side of the

small truck in which she was riding, and which was being driven by her husband. She was thrown against the windshield and door and struck behind the ear by some projection. She was also cut on the leg and injured by something striking across the middle of her back, possibly the handle of the door. She felt sick at the stomach and numb "all over," but suffered only a little pain for five or six hours, although during much of that period she couldn't use her leg. The place on her head swelled and became blue and one of her eyes crossed and became red. Until the day of the trial, nearly fifteen months later, Mrs. Saylor, as she testified, suffered greatly. She was a school teacher, 34 years old, and had previously been in sound health.

After the accident Dr. Sullivan took Mrs. Saylor to the office of Dr. Griffith in Mt. Vernon, who examined her. She then went to a picture show for awhile, as she stated, until her husband could get somebody to take her home. She remained in bed about two weeks under the care of the doctor and influence of opiates. Some time later while her husband was sick, she stayed in his store about two weeks, supervising and helping a new clerk, but she said she was not able to do anything except to tell the clerk the prices. She had driven the truck a time or two since, but it was painful and she had been unable to use one foot in the operation of the car. About the first of April, more than a year following the accident, she went to a hospital at Berea for a week. Then two weeks before the trial, on the advice of the doctors, she went to Louisville and had other X-ray pictures made there. The doctor put her in a steel brace which extends from under the arms to her hips. Her medical and doctors' bills amounted to about $400.

Dr. Julian D. Miller attended the plaintiff two days after the accident and on different occasions since then. He testified that she had a spinal injury and partial paralysis of a group of muscles in her right leg. She had extreme tenderness and pain over the twelfth dorsal vertebra which, in his opinion, is injured. She has lost sensation in a considerable portion of her right leg as was manifested by experiments and tests.

Dr. Hays Davis, of Louisville, made X-ray pictures and other examinations of the plaintiff two or three weeks before the trial. He related the patient's history

of how she was injured, and of her subsequent pain and other symptoms. The substance of his testimony is that Mrs. Saylor has an injured spine, which he described in substantially the same way as Dr. Miller, although perhaps not to the same extent. Dr. Davis explained the X-ray pictures to the jury. He prescribed a complete rest and the use of the steel brace above described.

The defendant introduced Dr. T. A. Griffith to whose office Mrs. Saylor went after the accident. He testified that he found only a slight abrasion· of the skin on her right leg and that she was complaining of headache, backache and nervousness. Dr. Griffith gave her some medicine for pain and advised her to go home and go to bed. He visited her at her home two or three weeks afterward `and made a complete examination. She then had a temperature of 102 degrees. The patient also stated that she was suffering pain and having trouble with lifting her right foot. Tonsilitis would have caused many of the symptoms and to it Dr. Griffith attributed his patient's condition. Mrs. Saylor later came to his office for consultation and he sent her to an eye specialist at the Berea hospital. This doctor's examination of the X-ray pictures revealed nothing wrong with the plaintiff's spine that would have been caused by any injury.

Dr. John Scott of Lexington, a specialist in general diagnosis, had examined Mrs. Saylor at the instance of the defendant while she was in the Berea hospital. He found nothing that he could connect definitely with any injury except a general nervous condition. It may have in some degree related to an injury and accident which she told him about. In short, Dr. Scott's testimony is that his findings were inconsistent with the history and claimed injuries and partial paralysis. The X-ray pictures did not reveal any injury to the spine and he regarded Mrs. Saylor as a normal woman for her age.

Dr. John Armstrong, of the Berea College hospital, found no evidence of any fractured vertebra or other spinal injury. There were some slight abnormalities in her spine; but the condition is not unusual, and is due to the "wear and tear of life or pressure on the vertebra that people have as they grow older." It causes a form of rheumatism. In this instance it is an overgrowth of bone which causes pain.

Dr. John C. Baker, also of Berea, examined the

plaintiff. He testified to the symptoms related by Mrs. Saylor to him, all of which she attributed to the injury. Dr. Baker described his examinations, including his study of the X-ray pictures, and gave his reasons for the conclusion that the plaintiff's general nervous condition is not related to the accident but is caused by other things, including chronic tonsilitis because of a regrowth of "tags" after the removal of her tonsils sometime previous.

As is related in the bill of exceptions, the parties agreed upon the instructions and have not brought them before us. It is, of course, to be presumed that they were in complete harmony with the evidence in respect to the character of injury and the legal measure of damage. The record is examined with the end in view of determining whether, accepting the evidence presented by and in behalf of the plaintiff, it could have reasonably justified the jury, in the exercise of a very high degree of discretion, in finding that $2,500 is fair and proper compensation for the damages plaintiff sustained. It must be borne in mind that the jury had the right to reject the contradictory evidence. Unless it can be said that the amount awarded clearly reflects passion or prejudice, or an inducement by some other factor than the evidence, the verdict should not be destroyed.

Emphasis is placed by the appellant upon what he considers the failure to establish permanent injury, that is, injury of such character as to constitute a permanent impairment of plaintiff's power to earn money, or as to produce permanent or irremedial pain. Herndon v. Waldon, 243 Ky. 312, 47 S. W. (2d) 1047. If the absence of professional opinion of permanency be regarded as a failure to establish that degree of injury, there are yet a number of factors to be considered. We have here evidence of an injured spine, with the resultant acute pain and partial paralysis, or interference, at least, with the use of one of plaintiff's legs and the loss of sensation in it; of several weeks in bed; of suffering and pain for more than a year; of the necessity of wearing a heavy steel brace or jacket; and of the incurrence of $400 expenses. Without any professional opinion, that evidence justified the conclusion of a probability of a continuance of the condition for a substantial length of time. The plaintiff is a young woman who had enjoyed perfect health until the accident.

As has often been stated, this court has never endeavored to lay down any fixed rule for controlling its decision of whether the amount awarded as damages in a personal injury case shall be regarded so excessive as to authorize an interference with the verdict and judgment rendered thereon after the circuit judge has considered the question on the motion for a new trial. As was written many years ago in Louisville & Nashville Railroad Company v. Fox, 74 Ky. 495, 11 Bush 495, 510:

> "There is no certain fixed criterion in a case like this by which either the court or jury can ascertain with certainty the amount which will be a fair compensation for the injuries complained of, and considerable reliance must therefore be placed on the good sense and sound judgment of the jury, and it is only when the amount of the verdict, when compared with the injuries to be compensated for, is so great that in the opinion of the court it can not be accounted for upon any other ground, that the court will be justified in attributing it to passion or prejudice."

That rule has been consistently observed.

Giving due consideration to some disparagement of the plaintiff's evidence, and to the very substantial countervailing testimony which attributed her condition to diseased tonsils and also minimized the character and degree of her injuries, the verdict is a liberal one; but we do not regard it so excessive as to require a reversal of the judgment.

Judgment affirmed.