## Goldberg v. Greer.

November 14. 1947.

Wm. H. Field, Judge.

Woodward, Dawson, Hobson & Fulton for appellant.

Edward J. Hogan for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

About 1:30 A. M. on June 8, 1944, an automobile owned and driven by appellee, William F. Greer, collided with one owned by a Mrs. Bierman at the junction of Sixth and Broadway Streets in the city of Louisville. The appellant, Rose Goldberg, was in the automobile of Mrs. Bierman as an invited guest, and she claims to have been severely injured by the collision. She filed this action in the Jefferson circuit court against defendant, and appellee, to recover damages therefor in the sum of $20,570, alleging that the collision was due to his negligence. The jury found for appellant and returned a verdict in her favor for $500, which amount defendant paid taking a receipt therefor from appellant and he is not appealing in any form.

Appellant's motion for a new trial, which was overruled by the court, relied on these alleged errors: (1) The admission of incompetent evidence for defendant, and refusing to admit competent evidence for plaintiff; (2) error in giving instructions 2 and 4; (3) overruling plaintiff's motion for a peremptory instruction at the conclusion of all of the evidence; (4) sustaining defendant's objection to the closing argument of plaintiff's counsel; (5) "misconduct of the jury in disregarding the court's admonition as shown by the record;" and (6) the verdict is grossly inadequate and was rendered "as a result of the jury's prejudice."

Since grounds (1) to (5), inclusive, were directed to defendant's liability and the jury found him liable, it becomes unnecessary to consider or determine any of them and leaves for our consideration only ground (6) complaining of the inadequacy of damages returned.

The automobile in which appellant was riding was traveling east on Broadway, whilst appellee's automobile was traveling north on Sixth Street. The collision occurred slightly east of the center of the intersection of the two streets, appellee's automobile striking the rear portion of the one in which appellant was riding. The collision caused appellant to be shoved to her left and slightly behind Mrs. Bierman, the driver, by whom she was sitting. She claimed to have been, and perhaps was, considerably shocked, and while in such condition she was conveyed to the City Hospital in an ambulance. In the meantime her son, Dr. Harry R. Gold, appeared

at the City Hospital and immediately had her transferred to the Jewish Hospital, where she remained five or six days and was then taken to her home. She was X-rayed perhaps twice which revealed no broken bones, torn ligaments or other physical injuries. Nor did any physician who examined her find any bruises or abrasions upon her body; though appellant in giving her deposition as if on cross examination stated that she did sustain a couple of slight bruises upon her body but which testimony was not corroborated by any of her witnesses, professional or layman. Nevertheless, plaintiff testified to great and more or less constant pain in her back and in different parts of her body emanating solely from the shock that she received as a result of the collision. Her testimony assumes the character of great exageration. She first testified that the collision "knocked" her off the seat, but in giving her deposition and in testifying orally at the trial she was finally made to say that she was only shoved in behind Mrs. Bierman, the driver, which the latter corroborated.

Appellant's son, Dr. Gold, testified to the complaints of his mother and also attempted to attribute them as a result of the collision and that it was possible that she might continue to suffer pain as a result therefrom. Dr. Alvin B. Ortner was called by appellant's son and he saw her the next morning in the Jewish Hospital. He testified that:

"At the time I saw the patient she was in bed; I couldn't get much history from her; I had to obtain it from Dr. Gold himself because she was pretty irrational; she wasn't stuporous but she was disoriented and she seemed to be in a good deal of pain; I couldn't get any kind of history from her, so I received the history from the informant. At the time I received the history that she was suffering most acutely from her back and she was having some abdominal pain. * * *

"At the time of the examination, as I say, the patient was irrational and very uncooperative; there was no external evidence of injury to the head. * * *

"There were no external contusions; however, there was marked muscle spasm of the lumbar muscles; there was a loss of the lumbar lordosis which was due to the muscle spasm. * * * It was debatable just what the

cause was; lots of times it comes from rupture of the muscle fibers; other times from hemorrage into muscle fibers much like a 'charley horse' where a football player will get severe bleeding in the muscles.''

He further stated that he believed the patient's condition "was due to the accident." He saw her four or five times later during her hospitalization and testified that: "I further felt that the patient might have to be or would have to be watched for further confirmation of a retroperitoneal hematoma."

This was later described as being a hemorrhage of a hidden lining of the inner cavity of the body, but other professional witnesses who testified in the case stated that the presence of "retroperitoneal hematoma" could not be discovered except through a surgical operation. The witness also testified that he finally decided that the accident to appellant did not produce a concussion, but he "felt it was a mental shock the patient had undergone." All of the conditions to which he testified were only what the witness *felt* might have been the results of the collision and which was contradicted largely, if not completely, by other professional witnesses testifying in the case. The extent of the pain suffered by appellant and its unabated continuance was chiefly supported by her own subjective testimony, but her activities following three weeks' confinement at her home after leaving the hospital contradict the extent of her suffering as described by her.

Appellant's actual expenses as shown by the testimony were only $171.05, and the balance of the verdict was necessarily for the loss of time and compensation for pain and suffering. Dr. Ortner, in addition to what we have recited, testified that the condition in which he found appellant (chiefly supported by her subjective testimony) might disappear in a reasonable space of time, though she "might not be able to take the strain and stress of life quite as well." He was asked if the condition in which he found appellant was calculated to produce permanent disability, to which he gave no definite answer. He was then asked the specific question: "In your opinion is her back or not permanently impaired?" to which he answered, "I feel anyone who has a severe back injury has a permanent disability." But

that answer was upon the theory that appellant sustained a back injury which was supported only by appellant's subjective testimony.

We feel that it is unnecessary to recite in detail the testimony of the other professional witnesses given in the case, all but one of whom were introduced by defendant and they were: Dr. Chas. W. Jefferson, Dr. Wm. F. Sommerville, and Dr. Ira Kern. Neither of them painted, nor tried to paint, a gloomy picture of appellant's alleged injuries and sufferings to which she testified, as did Dr. Ortner, and neither of them found any indication of her condition being permanent.

Appellant testified that before the collision she assisted her husband in waiting on the customers of their place of business which was a composite of restaurant, soft drink stand and grocery. After the collision she necessarily did not render such assistance while she was in the hospital and for the three-week period she was at home after leaving the hospital. After that she did assist her husband but not so much as she had done theretofore, and some of her neighbor-customers corroborated her as to her inability to work with the same efficiency when first resuming it as she did before the collision. The appellee (defendant) procured some city patrolmen, who were familiar with her activities as clerk in their business, to visit the place and they testified that she was as active as ever, and that they discovered nothing indicating any impairment of her efficiency.

No instruction given by the court is complained of except those submitting the issue of defendant's liability which, as we have seen, eliminates all necessity for discussing them, since the jury found him guilty of negligence and thereby rendering him liable for his negligence. Other instructions submitting plaintiff's right of recovery and relating to the extent of her damages are not complained of, and we have found them to be correct.

In the very recent case of Black v. Bishop, 306 Ky. 524, 207 S. W. 2d 22, the same question of inadequacy or compensation of damages was involved and in disposing of it we said:

"It is the rule in this state that to entitle the plain-

tiff to recover for permanent impairment of his power to earn money 'the evidence of permanency of the injury must be direct, positive, and satisfactory.' Augustus v. Goodrum, 224 Ky. 558, 561, 6 S. W. 2d 703, 704. Even the testimony of professional or expert witnesses which goes only so far as to indicate the injuries might be permanent or possible is not sufficient to take to the jury the question of permanent injury. Consolidated Coach Corporation v. Eckler, 248 Ky. 309, 58 S. W. 2d 582.

"The most we can find from this record is a suggestion made by appellee himself that somehow he may suffer permanently from his injury. We do not have any direct or positive evidence to that effect."

A like question was involved in the case of Herndon v. Waldon, 243 Ky. 312, 47 S. W. 2d 1047, 1049, which involved injuries sustained by the collision of two automobiles, the same as in this case. In that opinion we recited the testimony of the chief professional witnesses, similar to that given by the witness Ortner in this case, and in disposing of the question involved (the same as in this case), we said:

"* * * Permanent injuries, for which a recovery may be had in actions of this character, are those that are reasonably certain to be followed by permanent impairment to earn money, or producing permanent and irremedial pain, and to authorize a recovery for such permanent impairment there must be positive and satisfactory evidence thereof. Otherwise, the jury would be permitted, like the witnesses testifying to it, to invade the field of speculation, and in many instances base its verdict upon unsubstantiated facts which might later turn out to be wholly unfounded. In the absence of such proof, the other elements of recovery are sufficient to amply compensate for the injuries sustained by the particular plaintiff in the way of mental and physical pain, their probable duration, loss of time, hospital and physicians' fee, and any other allowable temporary element; and if they are to be augmented by the character of permanent injury for which compensation may be had, it should be made to clearly appear that such permanent impairment existed, or the evidence bearing thereon should be of such a nature as to render it rea-

838

sonably certain that plaintiff was so permanently injured.''

We cited in that opinion many prior domestic ones to the same effect, two of which are Cincinnati, N. O. & T. P. R. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075, and Chesapeake & O. Ry. Co. v. McCullough, 236 Ky. 647, 33 S. W. 2d 655.

We are thoroughly convinced from twice reading the record and briefs of counsel that the rule so announced in the cited opinions apply to this case, and that there was no manifested prejudice by the jury against the appellant, but which counsel claims was true because she was a Jewess; but that surmise has no foundation in the record.

Wherefore, for the reasons stated, the judgment is affirmed.