Len W. MORROW, D.M.D., and Daniel and Morrow, P.S.C., Appellants,

v.

Robert R. STIVERS, Appellee.

No. 90–CA–997–MR.

Court of Appeals of Kentucky.

Jan. 24, 1992.

Rehearing Denied April 10, 1992.

Discretionary Review Denied
By Supreme Court Oct. 14, 1992.

Leslie Rosenbaum, Rosenbaum & Rosenbaum, P.S.C., Lexington, for appellants.

William J. Gallion, Barbara Ann Kriz, Gallion, Baker & Bray, P.S.C., Lexington, for appellee.

Before DYCHE, HAYES and STUMBO, JJ.

DYCHE, Judge.

In this malpractice case, the appellant, Dr. Len W. Morrow, an oral surgeon, appeals a judgment of the Fayette Circuit Court in which a patient was awarded damages for Dr. Morrow's misdiagnosis and negligent treatment of facial pain.

The appellee, Robert R. Stivers, is fifty-eight and has worked for Lexington Building Supply for the last twenty-six years. Stivers developed a severe pain in the left facial area on or about April 10, 1983. Stivers was examined by Dr. Richard F. Hench, who had treated him for high blood pressure and seen him for regular checkups. Dr. Hench performed tests on Stivers and diagnosed his condition as "atypical facial pain" for which he prescribed medication.

In June of 1983, Stivers continued to suffer pain and was examined by Dr. Minyard, a dentist. Dr. Minyard recommended that Stivers be seen by the appellant, Dr. Len W. Morrow, and his partner, Dr. Daniel.

Dr. Morrow examined Stivers and diagnosed the pain as "trigeminal neuralgia" and recommended the removal of his infraorbital nerve. On August 18, 1983, Dr. Morrow performed a peripheral neurectomy on Stivers, removing the nerve.

The peripheral neurectomy was done through the tissue on the left gum inside of Stivers's mouth. The infra-orbital nerve exits an opening or foramen in the bone on the left cheek just below the left eye. Dr. Morrow exposed the nerve and cut it. He then put alcohol into the opening to destroy the remaining nerve. During the operation, Stivers's left eye became dilated and upon awakening from anesthesia, he suffered from diplopia or double vision.

On August 16, 1984, Stivers brought an action against Dr. Morrow and his practice group, Daniel and Morrow, P.S.C. Stivers alleged that Dr. Morrow was negligent in the diagnosis and treatment of his facial condition, resulting in painful and permanent injuries. Stivers also alleged that he was not informed by Dr. Morrow of the risks of the infra-orbital neurectomy and alcohol application and thus he did not give his informed consent.

Stivers's theory was that the alcohol administered by Dr. Morrow leaked back into the orbit of the eye, damaging nerves which control eye and pupil movement. Further, Stivers alleged that he suffered from atypical facial pain, for which a peripheral neurectomy is not a proper treatment. Dr. Morrow denied that the alcohol was responsible for this damage and maintained that diplopia and the other symptoms were due to a stroke suffered by Stivers during the operation.

At the conclusion of a trial held from March 19, 1990, to March 27, 1990, the jury found for Stivers in the total amount of $187,227.00.

The disputed issues on appeal largely revolve around the trial court's rulings involving the admissibility of certain evidence.

While taking the deposition of Dr. Dennis Sprague, a psychologist who testified at trial for Stivers, Dr. Morrow's counsel came into possession of a report from a neurologist, Dr. David B. Clark, a report by Dr. C. Lee, a radiologist, and a magnetic resonance imaging (MRI) scan.

Dr. Clark's report, dated March 5, 1986, was issued pursuant to an examination of Stivers, at his request. Based on that examination, Dr. Clark questioned whether the diplopia and the temporary dilation of the pupil were caused by the alcohol applied by Dr. Morrow. Dr. Clark suggested that Stivers might have suffered a vascular accident (stroke) in the upper part of the brainstem because such an injury would account for these symptoms. Dr. Clark recommended that the MRI scan be performed on Stivers to see if there were any evidence of stroke.

The MRI scan was performed on April 11, 1986. Dr. Lee examined the images which revealed an abnormality in the right side of the brainstem. Dr. Lee stated in his report that the abnormality "raises the question of a brainstem infarct."

A deposition taken of Dr. Adrienne Millett, an opthalmologist, on March 21, 1990, was placed into evidence. Dr. Millett testified that the cause of Stivers's condition was very likely the operation and the alcohol placed on the infra-orbital nerve, resulting in damaged nerve fiber controlling his eye movement and his pupil.

Dr. Millett was asked on cross-examination about the reports of Drs. Clark and Lee and the MRI scan which had been supplied to her after she reached her opinion regarding causation. The questions basically centered around whether a stroke in the brainstem could cause Stivers's condition. Dr. Millett stated that it was unlikely that a stroke in the brainstem would damage the specific areas injured without any wider effects. Dr. Millett added, however, that she would not rule out that possibility and would defer to the opinion of a neurologist.

On September 15, 1989, a hearing was held on the use and admissibility of the MRI scan and the reports of Drs. Lee and Clark. The trial court ruled that the MRI scan was admissible. Dr. Lee's report and Dr. Clark's report were ruled to be inad-

missible based on CR 26.02(4). The trial court also would not allow admission of depositions of Dr. Clark or Dr. Lee.

The trial court reasoned that if the rules prohibit the discovery of the evidence, such evidence would not be properly admissible. As a result, the trial court would not allow Dr. Morrow's experts to rely on the reports of Dr. Clark or Dr. Lee.

During the trial, Stivers planned to introduce the videotaped deposition of Dr. Millett. Prior to playing the videotape to the jury, Stivers sought to have all references to the reports from Drs. Clark and Lee deleted. The trial court ruled that, because Stivers supplied the reports to Dr. Millett, the reports had lost their privileged status. Dr. Morrow was then entitled to cross-examine her about these reports, concluded the trial court. The reports themselves were not admitted.

The trial court prohibited the use of the reports with other witnesses. Consequently, the reports of Drs. Clark and Lee or their opinions were not admissible despite Dr. Morrow's attempts in connection with the testimony of Dr. Roger J. Harris, Stivers's liability expert, Dr. John M. Gregg, an oral surgeon testifying on behalf of Dr. Morrow, and Dr. Jerry Anderson, also a defense witness.

■ Dr. Morrow first contends that the trial court erred in refusing the admission of evidence from Drs. Clark and Lee which had been obtained outside the discovery procedures outlined in Kentucky Rules of Civil Procedure.

CR 26.02(4)(b) provides that:

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35.02 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Dr. Morrow notes that CR 26.01 describes discovery methods as, *inter alia,* depositions, interrogatories, requests for admission. He argues that CR 26.02(4)(b) applies only to discovery and not to a situation, such as in the instant case, where the expert's facts and opinions became known outside the discovery process.

In *Crenna v. Ford Motor Company,* 12 Wash.App. 824, 532 P.2d 290 (1975), an expert who was consulted by the plaintiffs was named by them in their answers to interrogatories approximately nine months before trial. However, the plaintiffs indicated that they did not know whether the expert would be called at trial. The defendant sought, five days before trial, to find out whether the expert would be testifying at trial and was told a decision had still not been made. The defendant then sought to subpoena the expert. The plaintiffs responded with a motion to quash the subpoena and to bar the expert's testimony which was granted. At trial, the defendant attempted to call the expert as a rebuttal witness. The trial court ruled that the defendant could not call the expert.

The trial court's rulings were based on CR 26(b)(4)(B) which is practically identical to Kentucky CR 26.02(4)(b). The Washington rule does not contain the language in CR 26.02(4)(b) referring to facts and opinions of an expert "who has been retained or specially employed...." Washington's rule for discovery of experts is more restrictive than is Kentucky's because the former renders the expert nondiscoverable if he is expected to testify at trial, but Kentucky adds the requirement that he also be retained or specially employed in anticipation of litigation or preparation for trial. We do not perceive this difference to be significant in the instant case.

The Court in *Crenna, supra,* 532 P.2d at 295, stated:

We read CR 26(b)(4)(B) as a recognition that a trial is still an adversary proceeding and that, so conceived, fundamental fairness requires that 'discovery' not be used to defeat a litigant by probing for real or apparent weaknesses in his case

which may have been revealed in his trial preparation.

The Court concluded that the rulings by the trial court had been proper.

We agree with the holding in *Crenna, supra.* To allow Dr. Morrow to use the reports of Drs. Clark and Lee, or to admit their depositions, would undermine the purpose of CR 26.02(4)(b), which in part is to encourage prelitigation consultative evaluations. This Court in *Newsome v. Lowe,* Ky.App., 699 S.W.2d 748, 752 (1985), stated that consultive expert evaluations and the reports rendered under CR 26.02(4)(b) were "privileged." We reasoned that "if there is no confidentiality in them, the procedure will not be utilized." *Id.*

A factual difference between the instant case and *Crenna, supra,* is that Dr. Morrow came into possession of the reports inadvertently, while the defendants in *Crenna, supra,* were supplied with the information through answers to interrogatories. We do not believe that the reports of Drs. Clark and Lee should be given special status, and thus rendered admissible, simply because they were not obtained by a discovery method. Such a result would encourage litigants to bypass the discovery process.

Dr. Morrow cites *Heitmann v. Concrete Pipe Machinery,* 98 F.R.D. 740 (E.D.Mo. 1983), in which the Court ruled that the report of a nontestifying expert was out of the coverage of Fed.R.Civ.P. 26(b)(4)(B) when the report was supplied to and relied upon by a testifying expert. The Court in *Heitmann, supra,* reasoned that the report was needed for effective cross-examination of the testifying witness.

Dr. Sprague testified in his deposition that he did not rely on any medical records in forming his opinions. Dr. Millett also did not rely on these reports. Thus, *Heitmann, supra,* is not applicable.

CR 35.02 is also cited as support for Dr. Morrow's position. CR 35.02 concerns reports of examining physicians upon the request of the examined party. In this case, there is nothing in the record to show a request and delivery of any reports which would require Stivers, under CR 35.02, to supply the reports of Drs. Clark and Lee.

Dr. Morrow next contends that the trial court erred in limiting the cross-examination of all but one witness in regard to the reports of Drs. Clark and Lee.

The trial court's reason for this difference was that, though undiscoverable under CR 26.02, the reports were supplied to Dr. Millett. The other witnesses, except Sprague, were not at any time supplied with the reports.

■ It is a general rule that the scope and duration of cross-examination rests in the sound discretion of the trial court in both civil and criminal cases. *Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1988), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 774 *reh. denied,* 495 U.S. 941, 110 S.Ct. 2196, 109 L.Ed.2d 524 (1990); *Perry v. Ernest R. Hamilton Associates, Inc.,* Ky., 485 S.W.2d 505 (1972); *Commonwealth, Department of Highways v. Smith,* Ky., 390 S.W.2d 194 (1965).

The trial court in the case at bar prohibited the cross-examination for the purposes of furthering the ends of CR 26.02(4). We do not view such action as an abuse of discretion.

Dr. Morrow next contends that the trial court erred in admonishing the jury during the cross-examination of a defense expert to disregard any reference to Dr. Lee's interpretation of the 1986 MRI.

■ Dr. Jerry Anderson testified as a witness for Dr. Morrow. Dr. Anderson had examined the 1986 MRI, and under cross-examination he made references to Dr. Lee's interpretation. A bench conference ensued and Stivers sought an admonition. The trial court subsequently admonished the jury to disregard any references to Dr. Lee's report because it had been ruled inadmissible.

In *Seaton v. Rosenberg,* Ky., 573 S.W.2d 333 (1978), relied upon by Dr. Morrow, an expert gave opinion testimony concerning a person's cause of death. The trial court made remarks about this opinion to the jury which the Supreme Court found were prejudicial. Its reasoning was that "the

trial court's remarks at least diluted the effect of this evidence and at most effectively removed this evidence from consideration by the jury." *Id.* at 337.

The admonition in the case at bar did not have the same effect as the trial court's remarks in *Seaton, supra.* The jury heard Dr. Anderson's full opinion. We do not believe that the admonition detracted from Dr. Anderson's opinion simply because he and Dr. Lee had reached the same conclusion. The trial court directed the jury to disregard references to Dr. Lee's interpretation only because it had previously been ruled inadmissible. In *Seaton, supra,* the trial court made statements directly questioning the accuracy of the expert's opinion. We find no error here.

Dr. Morrow next contends that the trial court improperly limited his cross-examination of Stivers's liability expert, Dr. Roger J. Harris.

Dr. Morrow wanted to show that Dr. Harris had had his license suspended for five years because he had passed hepatitis to several patients. That Dr. Harris did not practice for a time due to the infection received from an institutionalized patient was admitted, but he maintained that he voluntarily relinquished his license. Dr. Morrow also wanted to introduce testimony that Dr. Harris could only have transmitted hepatitis through dirty instruments, sexual intercourse, or other exchange of body fluids. The trial court would not admit Dr. Morrow's claims.

■ The general rule is that a witness cannot be cross-examined on a collateral matter which is irrelevant to the issue at hand. *Shirley v. Commonwealth,* Ky., 378 S.W.2d 816 (1964); *Commonwealth v. Jackson,* Ky., 281 S.W.2d 891 (1955).

In *Elswick v. Commonwealth,* Ky.App., 574 S.W.2d 916 (1978), this Court held that it was not abuse of discretion to exclude testimony on cross-examination when its inflammatory nature outweighed its probative value.

■ The crucial question then is whether the evidence excluded in this case is collateral. We think it is. The matter of having hepatitis and thus not practicing for a time does not reflect on his knowledge or ability to testify on the matters at hand, i.e., the causation of Stivers's condition and any deviation by Dr. Morrow from the standard of care. Further, the inflammatory effect, if the jury heard testimony such as that Dr. Harris may have had sex with his patients, although unproven, would outweigh any probative value it might have. There was no abuse of discretion in excluding this evidence.

■ Dr. Morrow also complains that he was improperly kept from using a deposition to show Dr. Harris's lack of knowledge about the possibility that Stivers had a stroke.

Dr. Morrow maintains that the reason the trial court prohibited the use of the deposition was that it was only a discovery deposition as opposed to an evidentiary deposition. That statement is somewhat of an oversimplification and is misleading.

Dr. Morrow wanted to read a portion of a discovery deposition to the jury prior to the playing of a videotaped evidentiary deposition which was made months after the discovery deposition. Dr. Morrow wanted to show inconsistencies between the two depositions for impeachment purposes. The trial court stated that Dr. Morrow could have used the portions of the discovery deposition he wanted to read during the videotaped deposition. The trial court reasoned that if Dr. Harris was impeached, Stivers would have no way of rehabilitating him by asking Dr. Harris further questions. We think the ruling was sound.

Dr. Morrow next contends that incompetent evidence was received from Dr. Sprague. This alleged incompetent evidence consisted of the use of medical history as related directly to Dr. Sprague by Stivers and the diagnosis that Stivers had suffered a psychological injury as a result.

In *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380, 384 (1990), the only case cited by Dr. Morrow in regard to this issue, the Court adopted Rule 803(4) of the Federal Rules of Evidence which "blurs but does not abolish the distinction between testify-

ing and treating physicians." Under Fed. R.Evid. 803(4), a statement made to an expert is not inadmissible hearsay if the statement is "the kind of information which the expert customarily relies upon in the practice of his profession." *Drumm, supra.* The rule specifically includes statements of medical history pertinent to diagnosis.

■ Dr. Morrow's argument appears to be that Sprague's testimony is not admissible under Fed.R.Evid. 803(4) because the rule applies to medical purposes but not psychological ones. When its application is justified, Fed.R.Evid. 803(4) is broad enough to encompass the statements made to psychologists. *See Morgan v. Foretich,* 846 F.2d 941 (4th Cir.1988). The medical history supplied to Dr. Sprague was the kind of information customarily relied on by psychologists in the practice of their profession.

Dr. Morrow next contends that the rebuttal testimony of Dr. William O. Witt should not have been allowed.

■ Dr. Witt, an anesthesiologist, testified that, based on the blood pressure readings in the anesthesia records for Stivers's surgery, he did not suffer a stroke during the surgery. Dr. Witt was called as a rebuttal witness by Stivers to address a question which had been raised by one of Dr. Morrow's witnesses, Dr. Joseph Zerga, i.e., that Stivers suffered a stroke during surgery when his blood pressure dropped too low. The trial court ruled that Dr. Witt could testify in rebuttal because there was a new element as to causation, i.e., low blood pressure, which was not, and could not have been, addressed on direct. We see no abuse of the trial court's discretion on this point.

Dr. Morrow next contends that, even if the alleged errors were harmless individually, the cumulative effect of the errors requires a reversal.

Most, if not all, of the errors alleged were not simply harmless but were not errors. Moreover, because of the complexities of the case, particularly the inadvertent disclosure by Stivers, the trial court did a remarkable job in balancing the competing rights and interests of the parties. Stivers had a full opportunity to prosecute his case and Dr. Morrow had a full opportunity to defend himself. Dr. Morrow was allowed to use the MRI scan by showing it to his experts who then gave testimony concerning their findings to the jury. The reports of Drs. Clark and Lee were far less conclusive that Stivers had suffered a stroke than Dr. Morrow would have us believe. There was no cumulative effect of errors in this case.

Lastly, Dr. Morrow argues that the damages awarded were excessive.

The jury awarded Stivers a total of $187,-227.00 in damages. This award consisted of $2,227.00 for current medical expenses, $20,000.00 for future medical expenses, $108,000.00 for physical pain and suffering, and $57,000.00 for lost earning capacity.

■ We note initially that appellant's motion for a new trial alleged excessiveness only as to the awards for future medical expenses and lost earning capacity; we may not consider the amount awarded for current medical expenses and physical pain and suffering, as the trial court was not given an opportunity to rule thereon. *Skaggs v. Assad By and Through Assad,* Ky., 712 S.W.2d 947, 950 (1986).

■ Dr. Morrow claims that the award is excessive under the "first blush" rule. That rule provides that a damage award is excessive if the mind is immediately shocked and surprised at the great disproportion of the size of the verdict in relation to the amount authorized by the evidence, such that it must have been the result of passion and prejudice. *Wilson v. Redken Laboratories, Inc.,* Ky., 562 S.W.2d 633 (1978); *Townsend v. Stamper,* Ky., 398 S.W.2d 45 (1965).

The "first blush" rule is a mechanism to assist the *trial court* in performing its responsibility when called upon to decide whether the award is so excessive as to appear "to have been given under the influence of passion or prejudice." CR 59.01(d). In its entirety it is that "a verdict may be set aside as excessive

only if 'it is (so) to such an extent as to cause the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury.'" *Wilson v. Redken Laboratories, Inc., supra,* 562 S.W.2d at 636.

On the other hand, the appellate function is properly described in *Prater v. Arnett,* Ky.App., 648 S.W.2d 82 (1983):

"Upon reviewing the action of a trial judge in (granting or denying a new trial for excessiveness), the appellate court no longer steps into the shoes of the trial court to inspect the actions of the jury from his perspective. Now, the appellate court reviews only the actions of the trial judge ... to determine if his actions constituted an error of law. There is no error of law unless the trial judge is said to have abused his discretion and thereby rendered his decision clearly erroneous. Further, the action of the trial judge is presumptively correct ..." 648 S.W.2d at 86.

Our earlier opinion discussing review of the question of excessive damages in *City of Louisville v. Allen,* Ky., 385 S.W.2d 179 (1964) expresses essentially the same analysis as *Prater v. Arnett* of the different functions of trial and appellate courts. The basic guideline for appellate review is set out in the *Allen* case as follows:

"It serves to emphasize the initial and primary role of the trial judge in determining these issues; that his decision shall be *prima facie correct* and final; and that only in rare instance when it can be said that he *has clearly erred,* i.e., abused his discretion, will he be reversed." (Emphasis original.) 385 S.W.2d at 183–184.

Once the issue is squarely presented to the trial judge, who heard and considered the evidence, neither we, nor will the Court of Appeals substitute our judgment on excessiveness for his unless clearly erroneous.

In short, the rules governing appellate practice do not direct the appellate judge to decide if the verdict shocks his conscience or causes him to blush. Those rules charge us with the responsibility to review the record and decide whether, when viewed from a standpoint "most favorable" to the prevailing party, there is evidence to support the verdict and judgment. *Rogers v. Kasdan,* Ky., 612 S.W.2d 133 (1981).

*Davis v. Graviss,* Ky., 672 S.W.2d 928, 932–933 (1984) (emphasis original).

 There is evidence in the record of Stivers's substantial present and future medical expenses due to the injury. There is also evidence of the decrease in his ability to earn money in the future of $97,780.53 as well as testimony about his difficulty performing his present occupation. Stivers testified about the pain resulting from this injury and the difficulties in life due to the pain and double vision. We find no clear error nor abuse of discretion in the trial court's action.

The judgment of the Fayette Circuit Court is affirmed.

All concur.