Shannon REECE, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.

No. 2005–SC–000079–DG.

Supreme Court of Kentucky.

March 22, 2007.

John K. Carter, LaGrange, Counsel for Appellant.

Michael E. Krauser, Edward Alan Brutscher, Louisville, Counsel for Appellee.

SCHRODER, Justice.

■ The primary issue in this appeal is whether the plaintiff in a personal injury case must present specific evidence of how her earning power was permanently impaired in order to submit the issue of permanent impairment to the jury. We hold that the plaintiff need only prove with reasonable probability that the injury is permanent in order to obtain an instruction on permanent impairment of earning power. We also adjudge that it was error to allow in evidence of the medical license suspension of one of appellant's treating physician witnesses.

On October 20, 1997, Appellant, Shannon Reece, was injured in an accident as a passenger in an automobile owned and operated by Kathleen Opal. It was undisputed that Opal was solely at fault in the accident, and her insurance carrier, GEICO, paid Reece the full $10,000 in PIP benefits, as well as the policy limits of $25,000. Nationwide, the insurance carrier for Reece's father, provided underinsured motorist coverage for Reece under two policies, for a total of $50,000 in coverage. Reece brought the action herein against Nationwide to collect the underinsured motorist benefits. The parties stipulated to coverage, hence the only issues for trial were the extent and duration of Reece's injuries caused by the 1997 accident.

At trial Reece sought to prove that she suffered neck and back sprain/strain injuries as a result of the 1997 auto accident, claiming damages for past and future med-

ical expenses, past and future pain and suffering, "permanent injury", and for permanent impairment of her power to earn money. Evidence was presented at trial that Reece had pre-existing disc herniations from 1996, and that she suffered subsequent back/neck injuries in a 1998 cheerleading accident and in another auto accident in 2000. Reece presented the testimony of Dr. David Thurman, a pain management specialist, who treated her for neck and back pain after the 1997 accident. Dr. Thurman testified that Reece sustained a permanent strain/sprain injury to her lumbar spine as a result of the 1997 accident. During his treatment of Reece, Dr. Thurman placed no restrictions on her activities until after the 1998 cheerleading accident.

Reece took Dr. Thurman's deposition on October 2, 2003, and that deposition was ultimately read into the record at trial on October 30, 2003. On October 16, 2003, two weeks after Dr. Thurman's deposition was taken, the Kentucky Medical License Board entered an emergency order suspending Dr. Thurman's license to practice medicine for improperly prescribing Oxycontin which allegedly caused the death of a patient. Nationwide thereafter supplemented its witness list to include a representative of the Kentucky Medical License Board to testify regarding the license suspension. Through a motion in limine, Reece asked that this testimony be suppressed as irrelevant. The trial court denied the motion. At trial Nationwide did not call the intended witness, or present any evidence concerning the license suspension. However, Reece preemptively apprised the jury of the license suspension during voir dire, and mentioned it in her opening statement and closing argument.

Dr. Thurman referred Reece to Dr. George Raque, a neurosurgeon, for further evaluation. Dr. Raque testified via deposition that Reece had sustained injuries to her discs and lumbar spine at the L4–L5 level and that such injuries were permanent. It was Dr. Raque's opinion that the 1997 accident significantly enlarged one of the pre-existing disc herniations and was two-thirds responsible for Reece's back/neck pain and the permanency of her condition.

Reece testified that as a result of the back/neck injuries from the 1997 accident, she is unable to lift any significant weight and cannot sit for long periods of time. Reece stated that she attended Western Kentucky University for a semester, but had to leave because she could not go to class due to back pain and doctors' appointments. Thereafter, she attended Jefferson Community College (JCC) until she was placed on academic suspension. Reece stated that she ultimately wanted to finish college, become a registered nurse and work in a position that did not require heavy lifting. While attending JCC, Reece worked a data entry job at UPS for over a year, but was miserable because she had to sit and look up at a computer screen the whole time. After leaving UPS, Reece was employed in a secretarial position at Baptist East Hospital until she was asked to resign because of missing so much work. At the time of trial, Reece was not employed.

At the close of evidence, Nationwide moved for a directed verdict on Reece's claims of "permanent injury" and permanent impairment of her earning power. The court granted the directed verdict as to those two claims. The jury awarded Reece: $8,000 for past and future pain and suffering; $7,000 for past medical expenses; and $15,000 for future medical expenses. Reece appealed, arguing it was reversible error to deny the motion in limine to suppress the evidence of Dr. Thurman's license suspension, that the

court improperly limited her voir dire, and that it was error to direct a verdict for Nationwide on her claims for "permanent injury" and permanent impairment of earning power. The Court of Appeals affirmed on all issues raised. This Court granted discretionary review.

We shall first address the directed verdict for Nationwide on the claims for "permanent injury" and permanent impairment of earning power. The Court of Appeals correctly recognized that the two claims were not separate claims because the damages for permanent injury are measured by one's permanent impairment of power to earn money. The court then found that Reece failed to present sufficient evidence of a permanent injury to warrant an instruction thereon because she failed to offer specific evidence of how her earning power had been diminished because of the permanent injury. Relying on *Herndon v. Waldon*, 243 Ky. 312, 47 S.W.2d 1047 (1932), the court ruled that to create a submissible issue on permanent injury, the injury must "be of the nature that a permanent impairment to earn money would naturally follow therefrom, or the permanent injury must produce permanent or irremedial pain." The court then concluded that Reece's injury did not meet that standard because the disabling effects of Reece's injury were not obvious and a permanent impairment to her earning capacity was not readily apparent.

The question before us is whether the evidence submitted by Reece in this case was sufficient to warrant an instruction on permanent impairment of earning power, or whether Reece was required to present specific evidence, presumably in the form of an expert, of how her earning power was permanently impaired by the injury. Reece argues that no specific evidence of permanent impairment of earning power is required, only proof that the injury is permanent which she presented through the testimony of Dr. Thurman and Dr. Raque. Nationwide contends that the Court of Appeals correctly set out the standard which would require specific evidence of permanent impairment of earning power in the present case. We hold that evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power, and that the jury can through their common knowledge and experience make the determination if there has been a permanent impairment of earning power, the extent of such impairment, and the amount of damages for such impairment.

In *Herndon v. Waldon*, 243 Ky. at 315, 47 S.W.2d at 1048, the medical experts testified that the plaintiff's injury was permanent but could not say for certain that the injury would result in a permanent impairment of her earning power. In determining that the plaintiff was not entitled to an instruction on permanent impairment of earning power, the court stated:

> Permanent injuries, for which a recovery may be had . . ., are those that are reasonably certain to be followed by permanent impairment to earn money, or producing permanent and irremedial pain, and to authorize a recovery for such permanent impairment there must be positive and satisfactory evidence thereof. Otherwise, the jury would be permitted, like the witnesses testifying to it, to invade the field of speculation, and in many instances base its verdict upon unsubstantiated facts which might later turn out to be wholly unfounded. In the absence of such proof, the other elements of recovery are sufficient to amply compensate for the injuries sustained by the particular plaintiff in the way of mental and physical pain, their probable duration, loss of time, hospital

and physician's fees, and any other allowable temporary element; and if they are to be augmented by the character of permanent injury for which compensation may be had, it should be made to clearly appear that such permanent impairment existed or the evidence bearing thereon should be of such a nature as to render it reasonably certain that plaintiff was so permanently injured.

*Id.*

Contrast the above with the following language in *Chesapeake & O. Ry. Co. v. Hay*, 261 Ky. 566, 88 S.W.2d 318 (1935), wherein there was evidence that plaintiff's injury was permanent, but no evidence of permanent impairment of earning power:

> While in an action for personal injuries evidence of earning power is always admissible, neither allegation nor proof of specific pecuniary loss is indispensable to a recovery. Permanent impairment of earning power is merely the test to be applied by the jury in determining the compensation to be awarded for permanent injury, and, where permanent injury is alleged and shown, permanent impairment of power to earn money follows as a matter of course. To what extent is a question for the jury to be determined by the application of their common knowledge and experience to the facts and circumstances of the case.

*Id.* at 571, 88 S.W.2d 318 (quoting *Gretton v. Duncan*, 238 Ky. 554, 38 S.W.2d 448, 450 (1931)). The court in *Chesapeake* upheld the submission of the instruction for permanent injury, and although the case was decided three years after *Herndon*, made no mention of *Herndon* in the opinion.

Since *Chesapeake* and *Herndon* were decided, most Kentucky courts have followed the rule set out in *Chesapeake* that proof of permanent injury is all that is required to submit a question of permanent impairment of earning power to the jury, *Ralston v. Dossey*, 289 Ky. 40, 44-45, 157 S.W.2d 739, 742 (1941), although different standards of that proof have been set forth. *Black v. Bishop*, 306 Ky. 524, 527, 207 S.W.2d 22, 24 (1947) (direct, positive and satisfactory proof required); *Ingram v. Galliher*, 309 S.W.2d 763, 766 (Ky.1958) (reasonable certainty standard); *Herald v. Gross*, 343 S.W.2d 831, 833 (Ky. 1961) (reasonable certainty standard), overruled by *Rogers v. Sullivan*, 410 S.W.2d 624, 628 (Ky.1966) (establishing reasonable probability standard). But there has been some divergence in line with *Herndon*. *Sedlock v. Trosper*, 307 Ky. 369, 211 S.W.2d 147 (1948), *overruled in part on other grounds, Conley v. Foster*, 335 S.W.2d 904 (Ky.1960); *Goldberg v. Greer*, 305 Ky. 832, 207 S.W.2d 24, 26-27 (1947). We adjudge *Chesapeake* to be the governing law on this issue and specifically overrule *Herndon* to the extent it conflicts with *Chesapeake*.

While specific expert witness testimony on permanent impairment of earning power is helpful and often persuasive, *see Louisville Metro Hous. Auth. v. Burns*, 198 S.W.3d 147, 151 (Ky.App.2005), it is not necessary to submit the issue of permanent impairment of earning power to the jury. *See Pickard Chrysler, Inc. v. Sizemore*, 918 S.W.2d 736, 739-40 (Ky. App.1995) (upholding award of damages for permanent impairment of earning power where there was no expert testimony on how plaintiff's earning power was affected and little evidence of past job history and earnings). The plaintiff need only show with reasonable probability that the injury sustained is permanent. *Rogers v. Sullivan*, 410 S.W.2d at 628. This Court recognizes that a permanent injury may not always result in permanent impairment of earning power. Like the *Chesapeake* Court, we believe jurors are capable of determining, from the evidence and their

common knowledge and experience, whether there has been a permanent impairment, the extent of such impairment, and the value of such impairment.

 In ruling on a motion for directed verdict, the trial court is under a duty to consider the evidence in the strongest possible light in favor of the nonmoving party and must give the nonmoving party every favorable and reasonable inference which can be drawn from the evidence. *Lovins v. Napier*, 814 S.W.2d 921 (Ky. 1991). The court is precluded from directing a verdict unless there is a complete absence of proof on a material issue in the case or if no disputed issue of fact exists on which reasonable men could differ. *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky.App.1985). Through the testimony of Dr. Thurman and Dr. Raque in the present case, Reece demonstrated with reasonable probability that her injury was permanent. And Reece herself testified how her injury had affected her employment and education. We adjudge that Reece was entitled to bring her claim for permanent impairment before the jury. Accordingly, the decision of the Court of Appeals affirming the directed verdict for Nationwide on Reece's claim for permanent impairment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

We now turn to the trial court's denial of Reece's motion in limine to prevent introduction of the evidence of Dr. Thurman's medical license suspension. Relying on *Morrow v. Stivers*, 836 S.W.2d 424 (Ky. App.1992), the Court of Appeals adjudged that the denial of Reece's motion in limine to suppress the evidence of Dr. Thurman's medical license suspension was in error because it was a collateral matter irrelevant to the issue of his care and treatment of Reece. The Court of Appeals, however, found the error to be harmless. In *Mor-*

*row*, it was held that the evidence of the expert witness's medical license suspension for passing hepatitis to patients was properly suppressed because it was a matter collateral to the medical malpractice action and was unduly prejudicial. *Id.* at 429. Unlike *Morrow*, wherein the license of the doctor had been suspended five years prior to trial and was reinstated at the time of trial, Dr. Thurman's license was suspended at the time of trial, although it was not suspended when he treated Reece and at the time his deposition was taken.

Citing KRE 401, Reece argues that the Court of Appeals erred in concluding that the trial court's denial of Reece's motion in limine to suppress the evidence of Dr. Thurman's medical license suspension was harmless error. Reece maintains that the evidence of the license suspension lacked minimum probativeness of consequence to the determination of her personal injury action and had no relation to Dr. Thurman's treatment of her in this case. Reece also argues that any probative value of the evidence of the loss of Dr. Thurman's license was substantially outweighed by the danger of undue prejudice pursuant to KRE 403. Nationwide counters that the evidence of the license suspension was relevant under KRE 401 to impeach Dr. Thurman's testimony relative to his credentials, specifically, his testimony that he was licensed to practice medicine in Kentucky. Nationwide also points out that it ultimately never offered any evidence of the license suspension at trial, that it was Reece who actually brought the issue before the jury.

First, we believe it disingenuous of Nationwide to shift the blame to Reece for placing the evidence before the jury when Reece obviously preemptively raised the issue at the beginning of the trial because the trial court had denied her pre-trial motion in limine to suppress the evidence.

By supplementing its witness list to add the representative of the Kentucky Medical License Board, Nationwide was giving Reece notice that it in good faith intended to call the witness, and Reece should not be penalized on appeal for then preemptively raising the issue before the jury.

Under KRE 402, evidence must be relevant to be admissible. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401; *Tuttle v. Perry*, 82 S.W.3d 920, 922 (Ky.2002). The relevancy of evidence is a matter that rests largely within the discretion of the trial court. *Green River Elec. Corp. v. Nantz*, 894 S.W.2d 643, 645 (Ky. App.1995). We agree with the Court of Appeals that the evidence of Dr. Thurman's medical license suspension was a collateral matter irrelevant to his treatment of Reece and to her claims for personal injury in this case. The salient facts are virtually the same as those in *Morrow*, 836 S.W.2d 424, and we see no reason why the holding in *Morrow* that the medical license suspension was a collateral matter would not apply here. In both cases the reason for license suspension had no relation to the case in which they were testifying and was likely to be highly inflammatory. In Dr. Thurman's case, his license was suspended long after he treated Reece, and was not suspended at the time he gave his deposition. Accordingly, we hold that the denial of the motion in limine was error. It must be said, however, that our ruling makes no statement on whether this evidence would be admissible for impeachment purposes under KRE 608. KRE 608 was not cited by either party relative to this issue. Given our ruling reversing on the previous issue, there is no need to proceed to a determination of whether the denial of the motion in limine was harmless error.

Reece's remaining argument is that the trial court erred in not allowing her to ask a final question on voir dire—whether the prospective jurors would be prejudiced by Reece's pre-existing condition. Reece's counsel sought to ask this question after both parties had appeared to be finished with their respective questioning on voir dire. Nationwide maintains that the trial court's limitation on Reece's voir dire had nothing to do with the question she sought to ask, but was simply based on the fact that she had already been allowed liberal examination for well over an hour. It is well established that the trial court has broad discretion in conducting voir dire. *Manning v. Commonwealth*, 23 S.W.3d 610 (Ky.2000); *Farrow v. Cundiff*, 383 S.W.2d 119 (Ky. 1964). In light of the fact that Reece was allowed over an hour of unrestricted voir dire, we cannot say the trial court abused its discretion in denying her request for additional questioning. *See Tarrence v. Commonwealth*, 265 S.W.2d 40, 48 (Ky. 1954).

The decision of the Court of Appeals is reversed and the case is remanded to the Jefferson Circuit Court for further proceedings consistent with this opinion.

All concur.